Louisville Coffin Company v. Warren, &c.

CASE 82—EQUITY—MARCH 26.

# Louisville Coffin Company v. Warren, &c.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. The location of such buildings and machinery as those used by the Louisville Coffin Company in manufacturing within a city is a mere question of policy with those controlling its municipal government.

2. The chancellor, where such buildings and machinery have been used by the appellant for seven years without complaint, would be reluctant to interfere by injunction, requiring appellant to remove its machinery or cease to use it, except in a case where the injury to those living near to the buildings would be irreparable.

3. Where a nuisance causes substantial injury to the dwellings around it, and affects the health of the residents, the chancellor will interfere by injunction to abate it, but a clear case must be shown to authorize it.

ARTHUR CAREY AND A. DUVALL FOR APPELLANT.

1. Whatever annoyance appellant's factory may have caused appellees, it must be a common and public nuisance, if nuisance at all, and appellees are thereby subjected to no greater inconvenience than their neighbors.

2. Appellant and its predecessors have long been permitted to use the smoke-stack within the knowledge of appellees, without protest or complaint from any person.

3. Appellant is using all the modern appliances known to skill or enterprise to operate the factory in the safest and most approved manner. (Crosby v. O. and R. R. R. Co., 10 Bush, 288; Story's Eq. Juris., 924; Ray v. Sellers, 1 Duv., 255; West v. L., C. and L. R. R. Co., 8 Bush, 408; 4 Halst. Chy., 197; 8 Eng. Law and Eq., 217; 5 Ga., 15; 4 C. E. Green, 295; 8 Iredell's Eq., 115; High on Injunctions, 494, 488; 2 Black., 545; Dank v. Valentine, 5 Met., 8; 6 Johnson's. Chy., 19; Saxt., 518; 3 Mil. & K., 333; 11 Hump., 406; 6 Ind., 223; 40 Ill., 481; 44 Ibid, 81; 57 Penn. St., 274; 3 Sandford, 282; 5 C. E. Green, 203; 2 Devereux, 38; 11 Florida, 143; Dumesnil v. Dupont,. 18 B. Mon., 804; Hahn & Harris v. Thornberry, 7 Bush, 403.)

H. C. PINDELL AND GEO. M. DAVIE FOR APPELLEE.

1. It is well settled that what would be a lawful calling, if carried on properly in a proper place, is a nuisance, if conducted where it interferes with the comfortable enjoyment of the neighboring property. (2 Hill on Torts, 551, 557; 1 Hill, 126; 12 Ohio, 392; 4 C. B. N. S.,. 334; 8 R. I., 246; 46 Ala., 381; 12 Ab. Prac., N. S., 259; 34 Texas, 230; 23 N. J., 79; 24 Ind., 316; 3 Sandf., 281; 57 Penn., 275; 8:

Louisville Coffin Company v. Warren, &c.

Simmons, 272; 61 Eng. Com. Law, 257; 19 N. J., 295; 31 Mich., 295; 21 Conn., 213; U. S. Dig., 1872, 492; Ibid, 1873, 510; Dumesnil v. Dupont, 18 B. Mon., 800; Hahn v. Thornberry, 7 Bush, 404; Civil Code, secs. 7, 13.)

2. Acquiescence is not sufficient to bar appellee's right to an injunction. (1 Cox, 102; 37 Penn., 112; 3 Brewster, 430; 37 N. H., 254. 3 Am. Law Reg., N. S., 38; 6 Johnson's Chy., 19; 5 Mil., 14; 2 N. Y. S. C., 231; Stevens v. Stevens, 11 Mil., 251; 1 R. I., 247; Bigelow on Estoppel, 522, 577; 47 N. H., 426; 56 Pa. St., 413; 2 Lou. Ann., 773; 55 Barb., 406.)

3. Under the proof it is clear that an order enjoining the issue of smoke from appellant's chimney, after a day sufficiently far in the future to enable appellant to make preparation for it, would not stop the operations of the mill longer than would be necessary for appellant to have the boiler furnace newly arranged. (Wye Williams on Combustion, 237; Encyclopedia Britannica; Ibid, chap. 4; Uhres' Dictionary of Mechanics, Combustion.)

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

This action was instituted by L. L. Warren and others in the Louisville chancery court against the Louisville Coffin Company, alleging, in substance, that the issue of smoke, soot, and cinders from the smoke-stack of the defendant's factory is a nuisance to the plaintiffs, who live in the vicinity of the factory and own the property on which they reside. They sought and obtained an injunction in the action, and from that judgment this appeal was taken.

The ground on which the appellant's factory stands is in the interior of the square bounded by Walnut, Third, Chestnut, and Fourth streets. Warren's residence is on the corner of Fourth and Walnut; Pindell's residence is between Third and Fourth, on Walnut. The latter is the owner, also, of two houses on Third street. Warren and Pindell are the appellees here, and were the plaintiffs below.

Some four or five years prior to the institution of the action the appellant became the purchaser of a lease cov-

ering a part of the ground within the square already de-
scribed, and have erected upon it valuable improvements
in the way of buildings, in which has been placed costly
machinery for the execution of the work in which it is
engaged.

The factory is a substantial brick building, three stories
high, and the cost of its construction, including the machin-
ery, is not less than fifteen thousand dollars.   The smoke-
stack of which the complaint is made was erected in the
year 1870, and has been in use since that date, is fifty-five
feet in height, and overlooks the buildings surrounding it. .
It is alleged in the petition "that the machinery of this
factory is propelled by steam, and that a column of smoke,
soot, and burning embers pours almost constantly from this
smoke-stack, and frequently the smoke, soot, and cinders are
carried by the wind over the premises of the plaintiffs, en-
veloping their windows and doors, and rendering the atmos-
phere unwholesome for respiration; that their buildings are
in danger from the burning embers, and their tenant-houses
less valuable for rental, &c.; that the factory is located in
the midst of a square almost entirely occupied by buildings
for residences and light fancy stores; that some of the build-
ings have taken fire from the embers emanating from the
smoke-stack, and the rates of insurance have been greatly
increased."   These allegations are denied by the answer,
and by way of defense, it is also alleged that a steam plan-
ing mill was continuously operated on this ground for three
years prior to the purchase made by the appellant, and that
appellant used the same steam power and smoke-stack in the
mill and factory that had been used on the leasehold during
the last seven years past, and the volume of smoke, soot,
&c., was no greater than it had been during the entire period.

They allege the use of every precaution to prevent an injury to appellees' property, and deny any other injury than the annoyance that such buildings and machinery must neces- sarily cause; that their property cannot be removed without destroying its value, nor their business conducted without the aid of steam power.

The depositions of many witnesses have been taken in the case, and much conflicting testimony is presented in the record as to the effect the operating of appellant's factory has on the adjacent property, as well as the extent of the injury and annoyance resulting to those who occupy resi- dences on this square. The discomfort produced by smoke, soot, &c., from the running of large factories in cities has not, perhaps, been exaggerated by those who have testified; and with reference to the particular case, when looking alone to the testimony offered by the appellees, it can scarcely be maintained that the only injury sustained is the annoyance usually incident to such buildings. This testimony, how- ever, when considered in connection with that offered by the appellant, leaves the mind in doubt as to whether the parties complaining have sustained any substantial injury.

The rule that "any interference with our neighbor in the comfortable enjoyment of life is a wrong which the law will redress," must be considered in its application with reference to the condition in which the party has placed himself who is making the complaint.

One living in a city must necessarily submit to the annoy- ances which are incidental to a city life. It must be recollected that manufacturing establishments are necessary and indispen- sable to the growth and prosperity of every city, and while the cleanliness and beauty of that part of a city adorned by costly edifices may be marred by the erection of the foundry

or the machine shop, and the comforts of life to some extent. interfered with by the hum and noise of machinery, still the manufacturing interest upon which its prosperity depends. requires protection, and individual comfort must yield to the public good.    The testimony on the part of the appellees. conduces to show much annoyance and discomfort caused by the smoke and soot issuing from the smoke-stack of appellant's factory, while, on the other hand, it appears that. appellant has used the modern appliances for the consumption of smoke and the burning embers, so as to insure the safety of the adjoining property and lessen the annoyances. that are ordinarily caused to those living contiguous to such establishments.    The smoke-stack is in the rear of the buildings in which the appellees live, and a distance of near two hundred feet from the front of either residence.    The mouth of the stack is far above their buildings, and has been continuously used on the same ground for seven years prior to the time at which the injunction was granted.    In May, 1875, in order to remove the complaint made in regard to the falling embers, all the steam was made to escape through the stack, destroying in that manner the sparks and burning embers.    The factory is well managed, and the alleged nuisance is evidently no greater than is being caused to all who occupy residences near large factories operated by steam. The appellees, prior to 1875, may have had reason to anticipate danger from the sparks and embers that were occasionally emitted from the mouth of the smoke-stack; since that time, a steam pipe having been inserted in the smoke-stack, the decided weight of the testimony conduces to show that the steam dampens the soot and embers, causing them to fall near the stack.

This factory cannot be regarded a greater nuisance than the other manufacturing establishments within the city using steam power and having smoke-stacks attached to their buildings. If the injunction is made perpetual in this case, the precedent established would in effect destroy the manufacturing interest in the city of Louisville. The owners of family residences would, in most instances, object to the erection or continuance of such factories adjoining their homes, and if aided by the chancellor in having them removed, would destroy all manufacturing interests, or require the location of such buildings in a part of the city remote from the private residences of the inhabitants. The location of such buildings within a city is a mere question of policy by those controlling the municipal government, and the chancellor would be reluctant to interfere by injunction, except in cases where irreparable injury would result in the absence of such relief. In this case the chancellor is asked to restrain the appellants from operating a factory that has been running in the same locality for years without any serious damage to the owners of the property adjacent, and when the effect is to destroy entirely the business of the appellant. It would be more equitable to interfere to prevent its construction than to permit the expenditure, and then destroy the value of the property by denying to the appellant the right to use it. Whether or not a court of equity would have prevented the erection of the building, on the ground that the part of the city in which it is located had been set apart by common consent for private residences, is not necessary to be determined. In this case the buildings have been erected, and a large expenditure made, amounting to fifteen or twenty thousand dollars. The business in which appellants are engaged is lawful. It is not shown that the health of the

appellees or their families are affected by it, or that the at-
mosphere is rendered unpleasant except from the smoke at
certain periods, when the wind is blowing in the direction of
appellees' houses.

This condition of things is realized in nearly the entire cen-
tral part of the city, all of the inhabitants being more or less.
annoyed by the smoke and soot settling on their premises.
The right of the chancellor to grant an injunction where the
injury is irreparable cannot be questioned, but, on the facts
of this case, this power should not have been exercised.
While a mere acquiescence in the existence of a nuisance for
seven years, or even a longer time, will not ordinarily pre-
clude the party from abating it, still, where one stands by
and permits the erection of buildings, as in this case, and
their use for the purposes for which they were constructed
for seven years, it becomes very persuasive evidence that the
injury complained of is such as is incidental to like improve-
ments and common to the entire population on this square.
Some of the residents find no evil results from the location
and erection of the factory, while others regard it as a nui-
sance.   In the case of Robinson v. Baugh (9th Michigan),
which goes farther in sustaining the judgment below than any
case to which our attention has been called, the opinion is.
based on the fact that the nuisance complained of caused
substantial injury to the dwellings, and affected not only the
comfort but the health of the residents.    Besides, the de-
fendant's works in that case had been in operation but a
short time, were not expensive or of a permanent character,
and could be removed without much inconvenience or cost.

In that case it is said: "Extreme claims must give way,
and men must yield somewhat, in a spirit of accommodation
and concession, and measurably recognize and respect the

Louisville Coffin Company v. Warren, &c.

actual exigencies of time, place, and circumstances." The case of Rodes v. Dunbar (57 Penn.) is somewhat analogous to the case being considered. That was a bill to restrain the owner of the property from reconstructing a planing mill which had been destroyed by fire, and, while being operated, had caused much annoyance and discomfort to the owners of the adjacent property by reason of the smoke, soot, and embers issuing from the chimneys of the factory. The court discharged the injunction, and one of the grounds assigned was that such annoyances and inconveniences are incidental to city life.

In the present case, the proof shows that, with the escape of steam through the smoke-stack, the danger from fire is removed and the annoyance greatly lessened; and much of the testimony introduced by the appellees applies to the condition of the property previous to the making of this improvement. We think, in a case like this, where the property has been used for the same purposes for a number of years, and expenditures made that, if rendered valueless, must result in the financial ruin of the owners, the application for an injunction must be sustained by strong and convincing testimony; in other words, a plain case of nuisance, and with it irreparable injury, must be established. While the inconvenience and annoyance to the two appellees in this case must be conceded to exist, the facts developed do not authorize an interference by the chancellor, and the judgment below is therefore reversed, with directions to dismiss the petition.