Haggart *et al. v.* Stehlin *et al.*

---◆---

No. 16,142.

HAGGART ET AL. *v.* STEHLIN ET AL.

LIQUOR LAW.—*Statute Construed.—License Law.—Constitutionality of.* —The act approved March 17, 1875, requiring a license to sell intoxicating liquors by the drink, is constitutional.

NUISANCE.—*Maintaining a Saloon in Residence Portion of City.—Depreciating Property and Rendering Home Odious and Offensive.—Sufficiency of Complaint.*—In an action for damages on account of an alleged nuisance, and for a perpetual injunction against the same, the complaint shows that defendant has established a drinking saloon in a portion of the city devoted to residences, churches, Sunday-schools, orphan asylums, female college, public schools and residences of people distinguished for morality and habitual attendance upon church services; and, on account of these things, property in that vicinity bore a high valuation, both for sale and rent, being away from the business portion of the city, where no saloon had ever been established before; that the building wherein defendant sold liquors by the drink, was on a lot adjoining that on which plaintiffs, two women, have their residence; that by reason of the maintenance of such business in such place, with all the incidents generally accompanying such traffic, both the rental and selling value of plaintiffs' home has been reduced nearly one-half, and their home rendered odious and offensive to them.

*Held,* that the complaint states a good cause of action.

SAME.—*What Constitutes a Nuisance.—Saloon.—Intoxicating Liquor.—* It is no mere fanciful notion dictated by dainty modes and habits of living that makes one who has located his home in a quiet, peaceful part of a city, in the immediate neighborhood of numerous churches, Sunday-schools, common schools, female college, and among neighbors who are attendants upon such places, and out of the reach of the busier haunts of the business part of the city, protest and object to the maintenance of a saloon on an adjoining lot, and within ten feet of such residence, where drinking people are invited to, and do, assemble to drink intoxicating liquors, with all the incidents usually attendant upon such a place.

| | |
|---|---|
| 137 | 43 |
| 138 | 586 |
| 137 | 43 |
| 148 | 29 |
| 137 | 43 |
| 156 | 240 |
| 156 | 246 |
| 137 | 43 |
| 168 | 232 |
| 137 | 43 |
| 169 | 198 |
| 169 | 201 |

SAME.—*License.—Justification.*—In such case, a license to sell intoxicating liquors does not constitute a justification.

SAME.—*Landlord, Liability of.*—A landlord is liable where he rents his premises for the purpose of establishing thereon a nuisance.

Dissenting opinion by HOWARD, C. J., which is concurred in by HACKNEY, J.

From the Marion Circuit Court.

*E. F. Ritter*, for appellants.

*J. W. Kern* and *L. O. Bailey*, for appellees.

McCABE, J.—Suit by appellants against appellees, for damages on account of an alleged nuisance, and for a perpetual injunction against the same.

A separate demurrer by appellee Heidt was sustained, and a separate demurrer by appellee Stehlin, for want of facts, was overruled to the complaint. A demurrer to his answer was overruled, and appellants refusing to plead further, appellees had judgment on the demurrers.

The only errors assigned and noticed in appellants' brief are the sustaining of appellee Heidt's demurrer to the complaint and the overruling of appellants' demurrer to the answer of appellee Stehlin.

The substance of the complaint is that appellants have, for five years, owned and resided in, and still reside, in a dwelling house on lot 9, in block 21, in Johnson's heirs addition to the city of Indianapolis, situated on College avenue, in the second ward of said city; that the people of the locality named have been distinguished for fifteen years for a high grade of morality, good order and sobriety, and, until the acts hereinafter complained of, there was not a saloon, where persons could assemble to buy and drink intoxicating liquors, in said second ward, nor where intoxicating liquors were sold to be drank on the premises within said ward; that said ward has within its boundaries nine churches, an orphan asylum, where about one hundred children were kept

Haggart *et al. v.* Stehlin *et al.*

and cared for, when the acts hereinafter complained of began, another orphan asylum enterprise under way, and a female college, the public school largely attended, all in the neighborhood of the premises aforesaid; that the neighborhood of said premises is settled by and composed largely of religious, church-going people, who are opposed to saloons and places where persons are invited to assemble and buy and drink intoxicating liquors; that the real estate and residences in that locality, prior to the acts hereinafter complained of, were sought for by a class of people whose views and sentiments were in harmony with the aforesaid conditions and facts, and real property situated therein had an enhanced value because of said facts, both intrinsically and for rental purposes; that plaintiffs' property is situated where it was most favorably affected by the conditions aforesaid; that there are no manufacturing establishments or business houses excepting a few small groceries, meat shops and drug stores in the neighborhood; that on a lot adjoining plaintiffs' premises there is a house coming out to the sidewalk and fronting on College avenue, and only ten feet between said building and plaintiffs' said residence; that on June 17, 1890, defendant Stehlin established a saloon upon said premises, and has ever since continued the business of selling intoxicating liquors and permitting the same to be drank on the premises; that he advertised his said business by causing to be printed on the front of said building the words, ''Aurora Beer Hall,'' also, on the front windows, the words, ''Stehlin's Sample Room,'' and, on the south, along the side of said building, in letters a foot in length, the word, ''Saloon''; that he provided an entrance thereto from the front on said College avenue, from the side on said seventh street, and by the rear from an alley on the east, all of which have ever since been maintained by him; that persons have con-

tinually ever since been invited and received by said defendant upon said premises to, and do, buy from him and drink intoxicating liquors, and meet together upon the said premises for the purposes of drinking intoxicating liquors, and are seen by the public going in and coming out of said premises at each of said entrances to the same, for the purpose aforesaid; that the said saloon business, the place established where persons are invited to go, to meet and drink intoxicating liquors, the said advertisements, the meeting of persons, and their drinking intoxicating liquors at such place, and the other acts and conduct aforesaid, are, severally and altogether, exceedingly odious and offensive to these plaintiffs, and to the persons who seek residences in said locality, and to persons who desire to purchase real estate therein, and are great injuries and disturbance to the good order, morals and peace of said community; that plaintiffs' enjoyment of their said premises, by reason of the acts aforesaid, has been greatly disturbed and lessened; that their premises, which would have rented for $35 per month, have been so damaged in their rental value that they would not, so long as said saloon business shall be continued where it is, rent for more than $20 per month; that said premises would readily have sold for, and were of the value of, $5,500, but because of the aforesaid facts, would not sell for more than $3,000; that defendant Heidt owns said premises, and rents them to defendant Stehlin, for the purposes aforesaid, for $50 per month, which would not rent for $25 for any other purpose.

Said defendants claim that they are authorized and protected in the conduct of said business and other acts aforesaid by virtue of a license issued by the Board of Commissioners of Marion County, Indiana, to said defendant Stehlin, which plaintiffs deny, and say said

claim is false; that plaintiffs have been damaged by defendants' aforesaid wrongs, in the sum of $2,000.

Prayer for judgment for said sum, and for a perpetual injunction against the longer maintenance of said saloon, etc.

Stehlin's answer set up the fact that he had a license duly granted by the Board of Commissioners of Marion County, Indiana, to carry on said saloon, and to sell therein intoxicating liquors by the drink, to be drank on the premises, under the liquor license law.

One question presented by the record, therefore, is, whether the license alleged constitutes a valid defense to the supposed cause of action set up in the complaint; and the only other question is, does the complaint state a valid cause of action against appellees. The sufficiency of the complaint is the first question, because, if it is insufficient, there was no available error in overruling a demurrer to the answer of Stehlin, even though that answer was bad. *State, ex rel.,* v. *Emmons,* 88 Ind. 279; *Vert* v. *Voss,* 74 Ind. 565; *Reeves* v. *Howes,* 104 Ind. 435; *Low* v. *Studebaker,* 110 Ind. 57; *Bowen* v. *Striker,* 100 Ind. 45; *Ætna Ins. Co.* v. *Black,* 80 Ind. 513; *Ætna Ins. Co.* v. *Kittles,* 81 Ind. 96; *Dorrell* v. *Hannah,* 80 Ind. 497; *Ice* v. *Ball,* 102 Ind. 42.

Much labor and learning is expended by appellants' counsel in a contention that the license alleged in Stehlin's answer was invalid because the act approved March 17, 1875, requiring such a license to be taken out as a condition to sell intoxicants by the drink is unconstitutional. Why appellants' counsel so contend is a mystery to this court. If such contention were upheld, it is difficult to see how it could help the appellants. They are asking damages for, and an injunction against, an alleged nuisance created by the sale of intoxicants by the drink, in close contact with their dwelling house. But

for the liquor license law, every man in the ward, every man, woman, and child in the city could, if they chose, engage in the traffic without giving bond to keep an orderly house, without establishing their fitness to be entrusted with the sale of intoxicants, and without any other of the many restrictions and burdens that that statute imposes upon the traffic.

With that statute obliterated, the appellees could stand up and say, our business stands on the same legal basis as that of the dry goods merchant, the groceryman, the hardware merchant, or any other legitimate business or traffic. There is no mark of the public ban upon it, and our business stands the equal before the law of all other branches of traffic, and, therefore, we can no more be subjected to the charge of being the maintainers of a nuisance than the dry goods merchant. On the other hand, the license law treats the traffic as dangerous, as dangerous to public and private morals, dangerous to public peace and the good order of society, and, therefore, imposes heavy burdens upon it, among which is a heavy license fee to the county and city, and throws around it severe restrictions and liabilities upon those who engage in it, and of whom it requires proof of their fitness to be entrusted with the sale of the dangerous thing. With such a law in force, and springing as it does from such a public policy, as old as the State government, it is and must be easier to reach the conclusion that a licensed saloon might be kept in such a place as to make it a nuisance *per se*, than if the law and the policy upon which it is founded were obliterated, as appellants' counsel would have us do. So it seems quite apparent to us, if appellants' contention that the license law is unconstitutional should prevail, it would weaken rather than strengthen their position.

Such laws have been in existence from the earliest

Haggart *et al.* *v.* Stehlin *et al.*

times, and the courts everywhere have upheld their constitutionality, and appellants' counsel have been unable to cite a single decision where such laws have been held unconstitutional.

The only case cited by appellants' counsel upon the question as strongly affirms the constitutionality of such legislation as any of our own cases.' Counsel have not only failed to cite authority in support of this contention, but they have not even suggested one single valid reason why such laws are in conflict with any provision of the constitution. Their, whole contention is founded on a total misconception of the object and effect of such laws. Counsel suppose the law was enacted for the protection of those engaged in the traffic, and to encourage and foster that traffic, and cite provisions of the constitution supposed to be inimical to such an object and policy, whereas the object was to protect the people, and society generally, against the known evils and dangers which had arisen from the free and unlimited right of all people and all kinds of people to engage in the sale of intoxicating liquors, which they would enjoy without any statute upon the subject. What provision of the constitution such a law would infringe has not been pointed out, and we know of none.

The question is not whether the statute provides the most effective remedy for the evils mentioned nor whether some other kind of statute would not have better accomplished the object in view. That consideration belonged exclusively to the Legislature. The argument of appellants' counsel, all the way through, is precisely such argument as might be appropriate to address to the voters before an election, whereat a Legislature is to be elected. Indeed, appellants' briefs purport to be, and are, campaign documents printed in the best style of the art.

There are very many arguments that can be addressed appropriately to the law making power, and often effectively, that would be entirely out of place addressed to a court against the law after it is made.

There are many books extant where this information can be found. These books will inform counsel that this court has no power to make, change, or modify laws.

The following are a few of the cases where this court has affirmed the constitutionality of such statutes. *Thomasson* v. *State*, 15 Ind. 449; *Harrison* v. *Lockhart*, 25 Ind. 112; *O'Dea* v. *State*, 57 Ind. 31; *Hedderich* v. *State*, 101 Ind. 564; *Welsh* v. *State*, 126 Ind. 71.

The statute is clearly not unconstitutional.

Does the complaint state facts sufficient? It shows that appellee Stehlin has established a drinking saloon in a portion of the city devoted to residences, churches, Sunday-schools, orphan asylums, female college, public schools and residences of people distinguished for morality and habitual attendance upon church services; and, on account of these things, property in that vicinity bore a high valuation, both for sale and rent, and away from the business part of the city, where no saloon had ever been established before. In the midst of all this, said appellee sits down and begins the work of selling intoxicating liquors by the drink, in a building on a lot adjoining that on which appellants, two women, have their residence, with all the incidents generally accompanying such a traffic, from which both the rental and selling value of their home has been reduced nearly one-half, and their home rendered odious and offensive to them.

In *Reichert* v. *Geers*, 98 Ind. 73 (76), this court said: "The necessity which will authorize the granting of the writ of injunction, to restrain the carrying on of a business lawful within itself, must be a strong and imperious one. If it were otherwise, all mills and manufactories

might be stopped at the demand of those to whom they caused annoyance, even though the injury complained of might be slight and trivial." *Owen* v. *Phillips,* 73 Ind. 284, and authorities there cited.

And it must be conceded, that the sale of intoxicants by the drink is a lawful business.

Wood on Nuisances, section 38, says: "A  *  house *  *  which becomes a rendezvous or place of resort for thieves, drunkards, prostitutes, or other idle, vicious and disorderly persons, who gather there to gratify their depraved appetites, or for any other purpose; for such persons are regarded as dangerous to the peace and welfare of the community, and their presence at any place in considerable numbers is always a just cause of alarm and apprehension;  *  *  and a place where liquor is sold  *  * in excessive quantities, whereby persons become intoxicated, and where frequent brawls result therefrom, is a disorderly house, and indictable as a nuisance; for no person has a right to carry on upon his own premises or elsewhere, for his own gain or amusement, any public business clearly calculated to injure and destroy public morals, or to disturb the public peace. And while a license to sell liquors will protect a person from prosecution for such sales, it will not protect him from a prosecution for an abuse of the authority given him, whereby he creates a nuisance."

No person can maintain a private action for a mere public or common nuisance, for the reason that the exercise of such a right would lead to a great multiplicity of suits and endless interminable litigation. Wood on Nuisance, sections 645, 646.

The complaint at bar makes the injury partake somewhat of a public or common nuisance, in that it shows injury probably to others in the neighborhood. But a nuisance may be both public and private. Wood on

Nuisance, section 674; 16 Am. & Eng. Encyc. of Law, 930, and authorities cited.

But where the damage or injury to one is more than to the public, however slight, or where he sustains a special damage not common to all, he may maintain a private action. Wood on Nuisance, sections 14, 15, 16, 672.

The facts stated in the complaint, and admitted by the answer and demurrers to be true, show the injury to be greater to appellants than to the public. It is to be observed that the facts alleged in the complaint, and admitted to be true by the demurrer and answer under consideration, do not bring the case within the definition of that sort of a nuisance by Mr. Wood. But he was speaking about what it would take to make a drinking saloon a nuisance in any and every locality.

In section 9, he says: "The locality, the condition of property, and the habits and tastes of those residing there, divested of any fanciful notions, or such as are dictated by 'dainty modes and habits of living,' is the test to apply in a given case. In the very nature of things, there can be no definite or fixed standard to control every case in any locality. The question is one of reasonableness or unreasonableness in the use of property, and this is largely dependent upon the locality and its surroundings."

And, in section 10, he says: "The diminution of the market value of adjacent buildings by such use will not of itself make it a nuisance; but there is a limit to such right. No man is at liberty to use his own property without reference to the health, comfort, or reasonable enjoyment of like public or private rights by others. Every man gives up something of this absolute right of dominion and use of his own, to be regulated or restrained by law, so that others may not be hurt or hindered un-

Haggart *et al. v.* Stehlin *et al.*

reasonably in the use or enjoyment of their property. This is the fundamental principle of all regulated civil communities, and without it society could hardly exist, except by the law of the strongest. This illegal, unreasonable and unjustifiable use to the injury of another, or of the public, the law denominates a nuisance."

In *Hackney* v. *State*, 8 Ind. 494, in a prosecution of a nuisance in keeping a ten-pin alley, it is said: Thus, "anything offensive to the sight, smell or hearing, erected or carried on in a public place where people dwell or pass, or have a right to pass, to their annoyance, is a nuisance at common law."

In *Baumgartner* v. *Hasty*, 100 Ind. 575 (576), it is said: "A wooden building is not, in itself, a nuisance, * * but when erected * * where it endangers the safety of adjoining property, it may become a nuisance."

It is no mere fanciful notion dictated by dainty modes and habits of living that makes one who has located his home in a quiet, peaceful part of a city, in the immediate neighborhood of numerous churches, Sunday-schools, common schools, female colleges and among neighbors who are attendants upon such places, and out of the reach of the busier haunts of the business part of the city, protest and object to the maintenance of a saloon on the adjoining lot, and within ten feet of such residence, where drinking people are invited to, and do, assemble to drink intoxicating liquors, with all the incidents usually attendant upon such a place; very few people, indeed, who would not object and protest and be seriously annoyed thereat. Even the man who frequents such a place to drink would, as a general thing, object to the traffic obtruding itself within ten feet of his threshold. Especially where it is alleged and admitted, as

here, that it has so injured the appellants' property, both for selling and rental purposes.

We, think, therefore, that the complaint stated facts sufficient, as against Stehlin, to constitute an actionable nuisance.

Did it state a good cause of action against appellee Heidt? It states that he rented the property to appellee Stehlin for the purpose of being used for a saloon, and received $50 per month because of that fact, and that the property would not rent for more than $25 per month for any other use.

The landlord is liable where he rents his premises for the purpose of the establishment thereon of a nuisance. Wood Nuisance, sections 30, 31.

The court, therefore, erred in sustaining Heidt's demurrer to the complaint. Did the license set up in the answer of Stehlin constitute a justification? We are of opinion that it did not. It did not enlarge his rights, but restricted them within narrower limits than they were before, and without any statute on the subject. It was a certificate only that he had been put under bond to keep the peace, and had paid the license fees, and was thereby permitted to sell. Notwithstanding his payment of the large sums of money for license fees both to the county and city his license could be revoked without refunding his money. *State, ex rel.*, v. *Bonnell*, 119 Ind. 494; *Board, etc.*, v. *Kreuger*, 88 Ind. 231; *Moore* v. *City of Indianapolis*, 120 Ind. 483.

It is no contract, it is a mere permit given to sell in the exercise of the police power of the State, and may be withdrawn at any time. *McKinney* v. *Town of Salem*, 77 Ind. 213.

. The Congress of the United States passed an act authorizing the Baltimore & Potomac R. R. Co. to bring its tracks within the municipal limits of the city of

Washington, and to construct shops and engine houses there. And pursuant to said authority they built their engine house and shops close enough to the Fifth Baptist church edifice in said city to so annoy the worshipers thereat as to make the same a nuisance, and in a suit very much like the present to recover damages, but asking no injunction, it was claimed that the license afforded by the act of Congress was a complete protection against the charge of maintaining a nuisance, to which the Supreme Court of the United States said: "The acts that a Legislature may authorize, which, without such authorization, would constitute nuisances, are those which affect public highways or public streams, or matters in which the public have an interest, and over which the public have control. The legislative authorization exempts only from liability to suits, civil or criminal, at the instance of the State; it does not affect any claim of a private citizen for damages for any special inconvenience and discomfort not experienced by the public at large." *Baltimore, etc., R. R. Co.* v. *Fifth Baptist Church*, 108 U. S. 317.

In a similar action the Supreme Court of New Jersey said: "It may be lawful for him and his assignees to execute this act, so far as the public interests, the rights of navigation, fishing, etc., are concerned, and he may plead, and successfully plead, the act to any indictment for a nuisance, or against any complaint for an infringement of the public right, but can not plead it as a justification for a private injury which may result from the execution of the statute." *Sinnickson* v. *Johnson*, 2 Harr. N. J. 151.

In a nuisance case, in the court of appeals in New York, it is said: "But the statutory sanction which will justify an injury to private property, must be express, or must be given by clear and unquestionable implication

from the powers expressly conferred, so that it can be fairly said that the Legislature contemplated the doing of the very act which occasioned the injury. This is but an application of the reasonable rule that statutes in derogation of private rights, or which may result in imposing burdens upon private property, must be strictly construed. For it can not be presumed, from a general grant of authority, that the Legislature intended to authorize acts to the injury of third persons, where no compensation is provided, except upon condition of obtaining their consent." *Cogswell* v. *New York, etc., R. R. Co.*, 103 N. Y. 10 (21).

We, therefore, hold that the complaint stated facts sufficient as against both appellees to entitle appellants to some relief, and that the answer of Stehlin stated no defense.

We do not mean to be understood as holding that the complaint stated facts sufficient to warrant all the relief prayed for. It does not follow that because an act done, as here, under legislative authorization (the statute being constitutional), creating a nuisance and resulting damage to private property, the extraordinary remedy of injunction may, in all cases, be invoked for the discontinuance of the acts complained of, as well as to recover damages for the injury.

It is said in section 648, Wood on Nuisances: "The rule, as existing at this time, may be stated to be that where a person sustains special damage peculiar to himself, either to his person or property, direct or consequential, from a public nuisance * * he shall have his remedy therefor."

The *Baltimore, etc., R. R. Co.* v. *Fifth Baptist Church, supra*, was a case where damages only were sought, and not injunctive relief. And the court there said: "It is sufficient to maintain the action to show that the building of

the plaintiff was thus rendered less valuable for the purposes to which it was devoted.''

All the other cases above cited, after the church case, were cases of the same kind upholding the right of recovery for damages where the act done was done under legislative authorization, but no injunction was granted. The complaint was sufficient to constitute a cause of action for damages.

The judgment is reversed, the cause remanded, with instructions to overrule the separate demurrer of Heidt to the complaint, and sustain the appellants' demurrer to appellee Stehlin's answer.

Filed Dec. 14, 1893; petition for rehearing overruled March 14, 1894.

### DISSENTING OPINION.

HOWARD, C. J.—I regret that I am unable to agree in the result reached by the majority of the court in this case.

In the admirable opinion delivered on the first hearing of the case by ELLIOTT, C. J., then a member of this court (29 N. E. Rep. 1073), the validity of our statute regulating the liquor traffic was fully and clearly demonstrated, as it is, also, in the majority opinion of the court at the present hearing. Yet the able counsel for appellants has insisted, and still insists, that the question at issue is not the constitutionality of the statute in so far as it provides for regulating the sale of intoxicating liquors, but its constitutionality in respect to its provisions for licensing the sale of intoxicating liquors in saloons.

''If the act of the Legislature,'' says counsel, ''contained no other provisions than such as assume control, regulation and restriction upon the sale of intoxicating liquors, I should readily concede its validity. It is not the control over this subject and business to which I of-

fer objections. My objections are made to the license, the authority and the sanction, given by the act to the person, the place, and the conduct of the saloon business.''

With all deference to the learned counsel, it would seem that he here attempts to make a distinction where there is no difference. If the control and regulation of the liquor traffic are in the hands of the Legislature, that body must certainly be the judge as to the best means to secure such control and regulation; and it is, consequently, competent for the Legislature to determine, as it has done, that the license system is the most just, efficient and satisfactory means to attain the end in view.

This policy is the one adopted. The Legislature has, in effect, decided that the best policy for the regulation of the sale of intoxicating liquors, is the license system, that by such system the traffic can best be controlled, regulated, and restricted.

Counsel himself concedes ''that a statutory law providing a license system for saloons existed at the time when our present State constitution took effect, in 1851.'' There is no question that such system has been practically in operation ever since.

That the regulation of the liquor traffic, therefore, is entrusted to the Legislature, and that the policy adopted by the Legislature in the exercise of the power thus confided is the license system, seem to admit of no controversy.

Counsel, however, goes still further, and says that selling intoxicating liquors in a saloon is immoral, and that the act licensing such sale must, for that reason, be unconstitutional, inasmuch as the constitution provides for the promotion of morality. In answer to this, it would seem that if the regulation of the sale of intoxicating liquors is a trust confided to the legislative de-

partment of the government, then the sale itself can not
be immoral.    And if the Legislature, in the exercise of
its sound discretion, is of opinion that the saloon license
system is the best means of controlling and regulating
such sale, it would also seem that the sale in a saloon,
in the manner prescribed by law, can not be immoral.

Because some saloons are not conducted in the mode
which the law directs, it does not follow that a saloon
which is properly conducted is also an immoral institu-
tion.    Such a conclusion would amount to an admission
that the Legislature could not so regulate the sale of in-
toxicating liquors as to make such sale lawful, notwith-
standing the admission already made that the Legis-
lature has the power to control such sale.

It would seem to follow that the regulation and re-
striction of the liquor traffic must be a question of pol-
icy, and not, properly speaking, a question of morals;
and that, as such, it is confided to the good judgment of
the Legislature of the State.    So far as the courts are
concerned, to quote from the License Tax Cases, 5 Wall.
462, "The court can know nothing of public policy ex-
cept from the constitution and the laws."

Counsel asks that the damage feature involved in this
case to the appellants, caused by the establishment of a
saloon beside their home, be not overlooked by the court.
This consideration, though but thus incidentally referred
to, and not at all argued by counsel, I regard as the
strongest that could be urged in appellants' favor.    It
has frequently been held that locality is often an im-
portant element in determining whether a business is or
is not a nuisance.

In *Owen* v. *Phillips*, 73 Ind. 284, the doctrine was ap-
proved in its fullest extent, "That in some localities a
business will be considered a nuisance, while it would
not be so in others."

The fact that the business conducted by appellees is a lawful one, does not affect the question. No matter how good one's title to property; no matter how lawful the business in which he is engaged, he must so use his property and conduct his business as to cause no unnecessary injury to the property, rights, or interests of others. The reason for this rule, as well as the rule itself, are comprehensively stated by Judge RAY, formerly of this court, in his work on Negligence of Imposed Duties, p. 152: "It is the injury, annoyance, inconvenience, and discomfort thus occasioned that the law regards, not the particular business, trade or occupation from which these result. A lawful, as well as unlawful, business may be carried on in a place or in a manner so as to prove a nuisance."

The complaint shows the location of a saloon beside a home in a thickly settled residence part of the city, near, also, to schools and churches, and far from the business center. It also shows conspicuous advertising signs on the building, side and alley entrances, and that persons have been continuously going in there to buy and drink intoxicating liquors, and are so seen going in and coming out by the public. It avers a consequent diminution of the value of appellants' property and annoyance to appellants in the enjoyment of their home.

To this, appellees answered by setting up their liquor license issued by the board of county commissioners, and the conduct of the business by athority of and in pursuance of such license.

Had appellants put their argument in support of their demurrer to this answer upon the ground that such license did not authorize the acts complained of, some case might perhaps have been made in favor of sustaining such demurrer. But instead of this, appellants' contention is based upon the assumption that the an-

swer is insufficient to constitute a defense, for the reason that "the law pretending to authorize the same is unconstitutional and void." And the whole argument of counsel, instead of being addressed to the insufficiency of the answer as a defense to the acts complained of, is directed against the license law itself.

Counsel says, expressly, that "The point at issue here is the validity of the act so far as its license features are concerned. If the law in that respect is valid, then the defense, as set up in the respective answers of the appellees, is complete."

I must disagree with counsel's reasoning in this. The license granted by the county commissioners gave no right to appellees to keep a disorderly place, where intoxicating liquors are sold, as prohibited by section 2097, R. S. 1881, and gave them no right to unnecessarily injure their neighbors' property, rights, and interests. For, while the business of selling intoxicating liquors, under a license duly issued, is lawful; yet, as we have seen, "A lawful, as well as unlawful, business, may be carried on in a place or in a manner so as to prove a nuisance."

Appellants, in basing their argument upon the alleged unconstitutionality of the law, instead of upon the insufficiency of the answer as a defense to the alleged unlawful acts of appellees, abandoned, as I think, their only reasonable grounds of action. Whether the acts complained of were in fact sufficient to constitute appellees' place of selling intoxicating liquors a disorderly house or a nuisance, need not, as I think, be considered, since appellants, in their argument, chose to waive that question, and to rely wholly upon the alleged unconstitutionality of the license system. Having adopted a theory, they should be held to abide by it.

It has often been decided that every case must proceed upon a definite theory. Parties can not adopt one

theory in the trial court and a different theory in the appellate court.

I think that we must, therefore, assume, since the record shows nothing to the contrary, that appellants' contention in support of the demurrer to the answer was the same in the trial court as it is here, to wit, that the law licensing saloons is unconstitutional and void; and I think we must also assume that the trial court ruled upon the demurrer on that theory solely, holding against appellants that the law is constitutional; and, further, that the court did not otherwise rule, nor intend to rule, upon the question as to whether the answer constituted a sufficient defense to the acts complained of.

Courts are not called upon to decide questions not presented and argued by the parties; nor is it, as I think, equitable between the parties, nor just to the court trying the case, to reverse its decision upon a theory different from that on which the cause was tried, and different, likewise, from that on which the case is presented on appeal.

This principle is very fully developed in chapter 24 of Elliott's App. Proced. In section 489 of that work, it is said that ''Parties must stand by the positions assumed in the trial court and upon which they asked and obtained rulings. The same rulings are to be reviewed and not different ones.'' And, in section 494, ''If the parties put a definite construction upon the pleadings in the trial court and induce the court to act upon that construction, they must adhere to it on appeal  *  *  *. Pleadings will be treated on appeal as the parties elected to treat them in the trial court.''

If, then, the parties in this case, in arguing the demurrer to the answer, and the court, in ruling upon that demurrer, proceeded upon the theory that appellants demurred for the reason that the answer was insufficient

Haggart *et al. v.* Stehlin *et al.*

as being based upon an unconstitutional law, I do not think we should now pass upon that ruling of the court by assuming a different theory. Indeed, counsel does not ask this. He does not ask to have the demurrer sustained for any reason but because the license law is invalid, and says, emphatically, that "if the law in that respect is valid, then the defense, as set up in the respective answers of the appellees, is complete."

In addition to the express waiver so made, the failure of counsel to argue, in his briefs, any question in the case but the validity and constitutionality of the license law, is, by the settled decisions of this court, a waiver of all other objections to the answer.

"It is essential," says Judge ELLIOTT, in his App. Proced., section 444, "that all points be made in the brief, and properly made; if not so made, they are waived. Many cases affirm this doctrine."

As early as the case of *Bates* v. *Bulla,* 6 Ind. 36, the court ruled that "All points not made by brief may be treated as waived."

In the case of *Donovan* v. *Stewart,* 15 Ind. 493, it was said: "We are inclined to think that the points in the case, if any such exist, are not shown by the brief filed by the three attorneys, whose names are signed thereto, and are consequently waived."

In *Burk* v. *Hill,* 55 Ind. 419, the court said: "The sufficiency of the second paragraph of complaint is questioned by an assignment of error, but the question is not discussed in the briefs of the parties—indeed, it seems to be waived. We therefore dispose of it at once by holding the paragraph good."

In *Martin Sr.,* v. *Martin,* 74 Ind. 207, it was said, by WOODS, J., "that the rules of practice are the law of the land;" "that we have no right to disregard them;" and that following these rules, on appeal, "we

never go beyond the brief of the appellant to search the record in quest of errors which have not been pointed out in the brief; but the appellee, without filing any brief at all, is entitled to the benefit of everything in the record which may prevent a reversal of the judgment upon the errors assigned.''

In *Western Union Tel. Co.* v. *Ferris*, 103 Ind. 91, the statement is, ''As this question was not suggested in the original brief and argument of appellants' counsel, nor until after the brief for appellee had been filed and the case taken up for consideration by the court, we think it might well be regarded as waived.''

In the *Louisville, etc., R. W. Co.* v. *Grantham*, 104 Ind. 353, the court said: ''In this court the appellant has assigned a number of errors, but of these only one is noticed even by its learned counsel in his brief of this cause. * * * Of course, under the settled practice of this court, the other errors assigned by appellant, but not discussed by its counsel, are regarded here as waived, and are not considered. *Goldsberry* v. *State, ex rel.*, 69 Ind. 430; *Williams* v. *Potter*, 72 Ind. 354; *Coffin* v. *Trustees, etc.*, 92 Ind. 337.''

In *Carr* v. *State*, 135 Ind. 1, objection was made in the court below to certain offered evidence. This court found the questions, by which the evidence was sought, to be informal; but held that, as the objection to the evidence was sustained with express reference to the subject-matter, and not to the form of the questions, and as no objection was made in this court to the form of the questions, the correctness of the ruling should be determined as if no such informality had existed. That was the theory upon which the court ruled below, and that was also the theory upon which argument was had in this court.

See, also, *Kimberlin* v. *Tow, Trustee, etc.*, 133 Ind. 696;

*Funk, Guar.,* v. *Rentchler,* 134 Ind. 68; *Thompson* v. *Mc-Corkle,* 136 Ind. 484; also, Works' Prac., section 1099, and authorities there collected.

Whether, therefore, the demurrer in the case at bar should be sustained by reason of the insufficiency of the answer as a defense to the alleged acts complained of by appellants, and their demand for relief therefrom by injunction, or for any other reason than the alleged invalidity of the license law, is a question which has been waived by the failure of counsel to discuss the same, and, as I think, should not be considered.

The license law being valid, we must presume, until the contrary is shown, that appellees' business, being lawful in itself, was conducted in a lawful manner, that they did only what they had a right to do with their own.

In *Barnard* v. *Sherley,* 135 Ind. 547, it was said: "No principle of law is better settled than that a man has a right to the lawful use and enjoyment of his own property, and that if, in the enjoyment of such right, without negligence or malice, an inconvenience or loss occurs to his neighbor, it is a wrong for which there is no liability. This must be so or every man would be at the mercy of his neighbor in the use and enjoyment of his own."

It is true that there are certain well known exceptions to this general rule; but until it is shown that some such exception applies, or that negligence or malice in the conduct of the business exists, or the law is otherwise violated, the owner will not be disturbed in the use and enjoyment of his property.

In the case before us there is no unlawful act charged. According to the complaint, the appellee, Stehlin, established a saloon, and engaged in the business of selling intoxicating liquors, to be drunk on the premises; he

advertised his business by putting up printed signs, and provided different entrances to his building; persons have ever since been invited and received into said premises to buy from him and drink intoxicating liquors, and meet together there for that purpose, and are seen by the public going in and coming out.

That is the sum and substance of what is charged against appellees; and it is acknowledged in the complaint that the appellees claim that they are authorized to do these things by virtue of a license, duly issued by the board of county commissioners.

Appellees themselves answered this complaint by setting up their license, and averring that the business has been conducted in pursuance of such license. The truth of this answer is not denied, but, on the contrary, by the demurrer it is admitted to be true. No negligence or malice is charged, no violation of the liquor law, or of any other law of the State, is alleged.

We are brought, then, to the conclusion, according to the opinion of the majority of the court, that a lawful business, carried on in a lawful manner, is yet a nuisance; that a man, setting up on his own land a business made lawful by the statutes of the State, and conducting this business in a peaceful and quiet manner, without any wrongdoing on his part, whatever, may yet be assessed damages because his neighbor's property is incidentally lessened in value. I do not think this is the law.

If a modest mechanic's shop, or a small and plain house, the best he can afford, is set upon a little lot of his beside a splendid mansion, in a fashionable part of a city, it will undoubtedly lessen the value of the fine property adjacent. Can the owner of the marble palace and the beautiful lawns and pleasure grounds therefore collect damages from the mechanic who has set himself

down before the great man's door?   Not in England, where every man's home is his castle; still more, not in free America, where all men are equal.

And if, as follows from the decision of the court in this case, a man may collect damages because the value of his property is lessened by the lawful business in which his neighbor engages, why may not a merchant bring suit against the man who sets up another lawful business next door, which may, perchance, lessen the popular favor which the merchant has heretofore enjoyed?

It is hardly necessary to further intimate the mischievous results which must, as I think, inevitably flow from thus practically, and that, too, without any legislative sanction, engrafting so definite a feature of local option upon our license system.   If the people desire local option, and the constitution and the laws are so framed as to sanction it, it seems to me it will then be time enough for the courts to do so.

If there were any improper conduct, any violation of the law, any boisterousness or noise, anything injurious to health, or offensive to the senses, charged against appellees, I could see some reason for declaring the place a nuisance; and I do not think that the authorities show that a business so conducted can be found a nuisance, simply because the presence of even a properly conducted saloon is offensive, and because adjacent property is incidentally lessened in value.

In *St. James Church* v. *Arrington*, 36 Ala. 546, 76 Am. D. 332, the court held that a private nuisance would be abated only when the matter complained of is a nuisance *per se*, or when it has been declared a nuisance by law; and, hence, that the erection of a private stable near a church building would not be enjoined, a stable not being unavoidably and of itself a nuisance.

In 3 Stockton's Chancery, 204 (N. J.), 66 Am. D.
790, it was held that an injunction to prevent the erec-
tion of a building for manufacturing purposes, on the
ground of its being a nuisance to an adjoining dwelling
house, would not be granted, unless a very strong case
should be made, and one which is marked by some very
peculiar features.   To the same effect was *Van Bergen* v.
*Van Bergen*, 3 Johns. Ch. 282, 8 Am. D. 511, decided by
Chancellor Kent.

In *State* v. *Hall*, 32 N. J. Law, 158, the Supreme Court
of New Jersey held that a ten pin alley, kept for public
use in a village, even though kept in connection with a
lager beer saloon, is not, *per se*, a nuisance.

In *Pfingst* v. *Senn*, 23 S. W. Rep. 358, it was claimed
by neighboring residents, that certain premises were to
be re-opened, which had before been used as a pleasure
resort garden, with ten pins, dancing and band music
till early morning, where the noise would keep the neigh-
bors awake to the detriment of their health and comfort,
and where crowds of idle, disorderly persons were at-
tracted and became a nuisance in the streets; that all this
was not due to the management, but inhered in the busi-
ness.   The court of appeals, of Kentucky, held that a
nuisance was not clearly made out.

In the course of the opinion the court said:   "Nor are
the things about to be done in themselves nuisances.
There can be beer gardens, and pleasure resorts, music,
and dancing, and yet no nuisance set up.   Admittedly,
the conduct of such exercises, or the running of such a
business may result in inconvenience and annoyance to
neighbors not participating.   It may render the location
less eligible as a place of residence for people who pay
high rents, and are of 'dainty modes and habits of liv-
ing' (Wood Nuis., section 800); but, nevertheless, these
places and modes of amusement are not to be condemned

or denounced as nuisances in themselves. * * * One living in a city, it was said (in *Louisville Coffin Co.* v. *Warren*, 78 Ky. 400), must necessarily submit to the annoyances which are incidental to city life. In *Rhodes* v. *Dunbar*, 57 Pa. St. 274, it was well said by the learned chief justice: 'It is a difficult matter at all times to strike the true medium between the conflicting interests and tastes of people in a densely populated city.'"

These cases, and many others, go very much farther than it would be necessary to go in this case in order to hold that the business of appellees, as conducted by them, is not a nuisance, and that they are not liable for damages because the adjacent property has been rendered less valuable without any fault on their part.

I may say, besides, that were this an appeal from a judgment based upon an order of the board of county commissioners, renewing or refusing to renew a license to appellees in the locality where the acts complained of were done, the case, as I think, would be a stronger one for appellants than is the case before us, which is, in some respects, a collateral attack upon the order of the board granting the license.

I have no doubt, as already intimated, that the question of locality is one which the board of county commissioners, or the court on appeal, ought to take into consideration in determining the fitness or unfitness of an applicant for a license to conduct a saloon. The statute itself, section 5314, R. S. 1881, seems to imply as much.

In *Eslinger* v. *East*, 100 Ind. 434, objection was made to the introduction of certain evidence showing where the building in which license was applied for was situate, with reference to a public square and to a college and a graded school, and how many school children usually passed the building in going to and returning

from school. This court approved a ruling admitting the evidence. Judge MITCHELL, speaking for the court, after alluding to the requirement of the statute, that the applicant for license should state in his notice "the precise location of the premises in which he desires to sell," said, that while the inquiry must always be as to the fitness of the applicant to be entrusted with the sale of intoxicating liquor, yet "it may well have been supposed [by the Legislature] that in determining the fitness of things, a court or jury might take into account whether, under all the evidence, an applicant in a particular case was a fit person to be entrusted with the sale of intoxicating liquors, if the place proposed was such that only a man possessed of an extraordinary degree of circumspection and caution could fitly conduct the business at that place, with a due regard to the situation and surroundings."

That, however, was an appeal from the action of the board of county commissioners as to granting a license in the first place. Here there is an attack on the authority of the license after it is duly granted.

Besides, in this case, there is no question of the fitness of the appellee to keep a saloon. His character and fitness are not even called in question. It is the saloon itself, as a saloon simply, and a properly conducted saloon, that is objected to.

And here we return to the real question at issue. This saloon is objected to, not that it is in any way improperly carried on, but simply because it is a saloon, and because the law authorizing it is unconstitutional and void. All other questions are waived by appellants, in their argument, and, by the rules of this court, should not, as I think, be considered.

The waiver, too, is not an implied one, simply, but is an express waiver. And counsel candidly gives us his

reason for the waiver, saying: "If this were the only saloon in Indiana, located as it is, I dare say there would be little difficulty in suppressing it; but, as it is a part of a great system, we are compelled to attack the system."

Appellants thus seek to uphold their demurrer to the answer setting up the license, on the sole ground "that such license is no defense, because the law pretending to authorize the same is unconstitutional and void."

It does not seem to me. that we are justified in ignoring the positions taken by the parties before the lower court and in their appeal to this court. If there was error on the trial, that error should be presented here by the party appealing. We can not reverse a judgment for a reason that the lower court had no opportunity to pass upon.

Appellants' briefs show that the invalidity of the liquor law was the question presented to the lower court. The briefs also show that to be the question presented to this court. Shall we then do what Woods, J., in *Martin, Sr., v. Martin, supra*, said the courts would never do, "go beyond the brief of the appellant to search the record in quest of errors which have not been pointed out in the brief?" I think that we should not, and that the appellees are themselves "entitled to the benefit of everything in the record which may prevent a reversal of the judgment."

By the decision of the majority of the court, it would seem as if this rule was to be changed, and that hereafter the burden would be upon the appellee to show that the record was without error, rather than upon the appellant to point out the error, if any there should be.

To me, however, the long established rule seems the fair one to be applied in this case, fair to the parties and

fair to the court below, which could only pass upon the questions presented to it for consideration and decision.

The theory of appellants' complaint and of appellees' answer, the theory recognized in the trial court and urged in the briefs in this court, bears wholly upon the constitutionality of the liquor license law.

I am, therefore, of opinion, without even considering the fact that this saloon is properly conducted according to law, and is not a nuisance in itself, that the demurrer was properly overruled, and that the judgment ought consequently to be affirmed.

HACKNEY, J.—I concur in the dissenting opinion of HOWARD, C. J.

