No. 16,838.

RADICAN *v.* BUCKLEY.

SUPREME COURT PRACTICE.—*Assessment of Damages.*—*Weight of Evidence.*—The Supreme Court can not pass upon the sufficiency or insufficiency of the damages assessed where to do so would require it to weigh conflicting evidence.

NUISANCE.—*Privy.*—*Injunction.*—The erection of a privy and vault within three and one-half feet of the dining room of an adjoining owner may be enjoined as a nuisance, without reference to the manner in which the vault is constructed or to the intention of the defendant to use disinfectants.

From the Fayette Circuit Court.

*G. C. Florea* and *L. L. Broaddus,* for appellant.
*R. Conner* and *H. L. Frost,* for appellee.

McCABE, J.—Issues were formed upon appellant's complaint in two paragraphs, which were tried by the

court without a jury, resulting in a finding for appellant on the first paragraph of the complaint, assessing his damages at five cents, and a finding for appellee on the second paragraph; the court rendered judgment on the finding over appellant's motion for a new trial.

The only error assigned here that is insisted on by appellant is the action of the trial court in overruling the motion for a new trial as to each paragraph of the complaint severally.

The first paragraph of the complaint was to recover damages against appellee for the maintenance of a privy and privy vault on an adjoining lot to appellant's lot whereon his residence was situated, in the city of Connersville, in such a manner as to become a private nuisance to appellant on account of the foul stenches emitted therefrom, and other discomforts and injuries arising therefrom.

The evidence shows that the privy involved in the first paragraph was on the premises when appellee became the owner thereof, was situated within a foot or two of the line dividing appellant's from appellee's lot and 33 feet of the rear end of appellant's residence. Before the trial appellee had removed the privy building from the vault and filled it up in such a manner as to put an end to the foul stenches theretofore escaping therefrom. The appellee had only owned the premises complained of a few months before he abated the nuisance. While the evidence, as it seems to us, would have justified a much larger assessment of damages than the trial court made, yet the evidence is of such a character that we can not disturb the finding on the first paragraph of the complaint.

The question of the assessment of damages is one peculiarly within the exclusive province of a jury or the court trying the cause. This court can not disturb the

finding, because the damages assessed in this case are too small without weighing the evidence. This court has no power to weigh evidence or determine what the evidence establishes unless it is all one way. *Canada* v. *Curry*, 73 Ind. 246.

The second paragraph of the complaint sought to enjoin the erection of a new privy by appellee on his lot within three and one-half feet of appellant's dining-room and kitchen in his residence. When the trial took place, the new privy had been about completed. The undisputed facts established by the evidence under the second paragraph are, that appellant's dwelling house is a one story frame with a room numbered four, used as a dining-room and kitchen, and rooms two and three used as bed-rooms. The west door to the dining-room is the one most used by plaintiff as the main entrance to his house. The dining-room is only eighteen inches from the line between appellant's and appellee's lots, and only three and one-half feet from defendant's new privy. This privy is a three compartment frame building, eight feet high, with comb roof additional, located immediately north of and flush or even with the principal entrance door to the dining-room, with a door in the west end facing the same way appellant's main entrance door aforesaid faces, said privy being intended for the use of three tenement families occupying tenements on appellee's lot, and in actual use by them at the time of the trial. Said privy, as located, is in as plain view from appellant's front yard as his own house, and persons entering said privy for the purposes thereof can be plainly heard in appellant's house, especially in his dining-room and kitchen.

The vault of this privy is twelve feet deep, walled with stone and cemented, so as to allow no percolations, and consequently no absorption of the excrement, urinal fluids and gases by contact with the earth.

Appellant claimed, on the trial, that he intended to erect a lattice work on the north, east and west sides of the privy and plant vines around the same.

There was a difference of opinion among the expert witnesses as to whether the constant use of disinfectants would effectually prevent the stench, offensive odors and bad smells naturally arising from such a place.

It is contended, on behalf of appellee, that a privy is not a nuisance *per se*, and can not be enjoined any more than any lawful business calling or trade until it is carried on in an improper manner and its continuance has deprived the complaining party of the comfortable enjoyment of his property.

It is said, in Kerr Injunctions, p. 174, that "The court will not in general interfere until an actual nuisance has been committed; but it may, by virtue of its jurisdiction to restrain acts which, when completed, will result in a ground of action, interfere before any actual nuisance has been committed, where it is satisfied that the act complained of will inevitably result in a nuisance." See, also, Wood Law of Nuisance, section 796.

It is laid down by the author last referred to, section 579, that "Privies are regarded as *prima facie* nuisances, and although necessary and indispensable in connection with the use of property for the ordinary purposes of habitation, yet, if they are built or allowed to remain in such a condition as to annoy others in the proper enjoyment of their property, by reason either of the noisome smells that arise therefrom, or by the escape of filthy matter therefrom upon the premises of another, or so as to corrupt the water of a well or spring, they are nuisances in fact."

And the same author, at section 778, in discussing what is meant by irreparable injury, which will authorize the interposition of equity by way of injunction, says:

"By irreparable injury is not meant such injury as is beyond the possibility of repair, or beyond possible compensation in damages, * * but that species of injury, whether great or small, that ought not to be submitted to on the one hand, or inflicted on the other, and * because it is so large on the one hand, or so small on the other, is of such constant and frequent recurrence that no fair or reasonable redress can be had therefor in a court of law."

The law, as applicable to the undisputed facts under the second paragraph of the complaint, is admirably stated by Chancellor Zabriskie, in *Cleveland* v. *Citizens' Gas Light Co.*, 5 C. E. Green (20 N. J. Eq.), 205.

The chancellor said: "Any business, however lawful, which causes annoyances that materially interfere with the ordinary comfort, physically, of human existence, is a nuisance that should be restrained; and smoke, noise and bad odors, even when not injurious to health, may render a dwelling so uncomfortable as to drive from it any one not compelled, by poverty, to remain. Unpleasant odors, from the very constitution of our nature, render us uncomfortable, and, when continued or repeated, make life uncomfortable. To live comfortably is the chief and most reasonable object of men in acquiring property, as the means of attaining it; and any interference with our neighbor in the comfortable enjoyment of life is a wrong which the law will redress. The only question is, what amounts to that discomfort from which the law will protect? The discomforts must be physical—not such as depend upon taste or imagination. But whatever is offensive physically, to the senses, and by such offensiveness makes life uncomfortable, is a nuisance." See, also, to the same effect, *Ross* v. *Butler*, 4 C. E. Green (19 N. J. Eq.), 294; *Haggart* v. *Stehlin*, 137 Ind. 43.

As before observed, the evidence was conflicting as to whether the use of disinfectants constantly in the privy would effectually prevent the noisome smells and odors naturally arising from a privy vault in which human excrement and filth is kept confined. Appellee testified that he intended to use disinfectants in the privy, but that he had not used any in it yet.

Appellee's counsel quote in their brief the familiar rule from Cooley Torts, p. *600, running through all the authorities, and attempts to apply the same to the facts under the second paragraph of the complaint in support of their contention. That rule is that "It must be an inconvenience materially interfering with the ordinary comfort, physically, of human existence; not merely according to the elegant and dainty modes and habits of living, but according to the plain, sober and simple notions among the English people."

And, from *Huckenstine's Appeal*, 70 Pa. St., p. 102, they quote: "And more than this, it (the court) must look at the customs of the people, the characteristics of their business, the common uses of property and the peculiar circumstances of the place wherein it is called upon to exercise the power."

The application of that rule in this case is against appellee's interest.

Appellant's objection to the maintenance of a privy within three and one-half feet of his dining-room and kitchen, with one door of the privy opening flush or even with the entrance door to such dining-room, that being the main entrance door to his house, in short, his objection to the maintenance of a privy almost in his dining-room door, is no frivolous complaint, is not founded on an elegant and dainty mode and habit of living, but is founded upon the plain, sober and simple notions and customs of our people.

No custom or notion of our people is more universal than that which requires privies to be built in the background of the premises, as far as possible from the house, the place designed for human habitation, especially in towns and cities like Connersville, where no sewerage is provided, and where the human excrement deposited therein must remain in the vault, giving off its noxious exhalations and offensive smells.

The only conceivable reason for building appellee's privy within three and one-half feet of appellant's kitchen and dining-room, consistent with the absence of rank malice in appellee, was to get it as far away as possible from each of the three tenement houses he had crowded onto his one lot. There was room enough on his lot to have placed the privy much farther from appellant's residence without getting it so uncomfortably near to any of the tenement houses on appellee's lot.

In that he showed that for himself and his tenants he had no faith in the use of disinfectants to deodorize a privy, which he stated in his testimony he intended to use for appellant's benefit, so as to make appellant's life tolerable with a privy large enough to accomodate three families, in his dining-room door, or practically so.

We do not think that the law compels a man to submit to a thing which is necessarily a nuisance, merely because the wrong-doer promises to do all he can to counteract the evil effects of such nuisance.

It was held, in *Wahle* v. *Reinbach*, 76 Ill. 322, that a privy, built on an adjoining lot within eight feet of the complainant's residence, was a nuisance in fact. The court, in that case, speaking by Justice Schofield, at p. 327, said: "Manifestly, no remedy in an action at law would be adequate in a case like the present. Upon what basis could the damages be estimated for the sickness or discomfort caused by inhaling the unwholesome

Radican *v.* Buckley.

vapors, drinking the impure water, and enduring the foul stenches originating from a structure of the description and relative location complained of? And to say that such a nuisance must be suffered to be created and continued until its character shall be formally determined at law, would seem ·to be but little better than a mockery of justice to him whose residence is affected by it.''

In *Miley* v. *A'Hearn* (Ky.), 18 S. W. Rep. 529, it was held that ''Injunction will lie to prevent an adjoining land-owner from building a privy within ten feet of plaintiff's well, and thirteen feet of the dining-room and family bed-room, where she and her two daughters * eat and sleep.''

And, it was further said in that case, that ''The strongest testimony for the appellant is that, while it is possible to make the vault of the privy water-tight, and to destroy the bad odors arising from it by the constant use of disinfectants, yet there is always danger in these respects. The walls of the vault are likely to crack, and whether disinfectants will have the desired effect depends to some extent upon the state of the atmosphere, and other conditions.''

We are of opinion that the finding of the court as to the second paragraph of the complaint was contrary to law.

The judgment is reversed as to the second paragraph of the complaint; cause remanded, with instructions to grant a new trial as to said second paragraph; and the judgment is affirmed as to the first paragraph of the complaint.

Filed Sept. 20, 1894.