Case 98—PETITION EQUITY—September 19.

# Pfingst, &c., v. Senn, &c.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

INJUNCTION AGAINST A THREATENED NUISANCE will not be granted when the thing complained of is not *per se* a nuisance, but may or may not become so according to circumstances, and when it is uncertain, indefinite or contingent, or productive of only possible injury.

The opening of a beer garden, dancing hall and bowling-alley in a city will not be enjoined, although the same place of amusement as formerly conducted may have been a nuisance.

O. A. WEHLE AND O'NEAL, PHELPS & PRYOR FOR APPELLANTS.

1. The annoyances described in the petition constitute such a private nuisance as will justify the interference of the chancellor. (High on Injunctions, sec. 778; Walker v. Brewster, L. R., 5 Eq , 25; Inchbald v. Robinson, L. R., 4 Ch , 388; Soltan v. DeHeld, 2 Sim. N. S., 133; Snyder v. Cabell, 29 W. Va , 48.)

2. The fact that the nuisances are only threatened is no reason for denying the injunction. (Wood, Law of Nuisance, sec. 100; *Idem*, sec. 797.

3. The fact that the garden has for several years been used as a beer garden and place of entertainment does not deprive plaintiffs *per se*

of the right to an injunction. (Rodenhurst v. Coates, 6 Grant's Ch., 140 (cited by Wood, sec. 592); Louisville Coffin Company v. Warren, 78 Ky., 406; Wood, sec. 360; Learned v. Castle, 78 Cal., 454.)

And though acquiesence might prevent the plaintiffs from stopping the nuisance, still they are not compelled to stand any increase of it. (Wood, sec. 803, last sentence; Bankhart v. Houghton, 27 Beav., 425; Lawler v. Potter, 1 Hannay (N. B.), 328; Tipping v. St. Helen Smelting Co., 4 B. & S., 608.)

ROGERS & DUNCAN FOR APPELLEE.

1. Irreparable injury is a prerequisite to interference of equity by injunction. (High on Inj., sec. 740.)

A general allegation of irreparable injury not sufficient. The facts showing it must be stated. (High on Inj., secs. 35–1581; McKinzie v. Mathews, 59 Mo., 101.)

2. It must appear the act is illegal before an injunction will be granted. (High on Inj., 742; Bruce v. President, 19 Barb., 371.)

3. The alleged nuisance is under municipal control. (Lou. City Code, chap. 22, sec. 53; chap. 22 and chap. 19, sec. 15.)

And if under municipal control, no injunction will be granted. (High on Inj., sec. 745.)

4. No adequate remedy at law must be alleged. (High on Inj , 745.)

5. No injunction will be granted when the benefit to public outweighs inconvenience of individuals. (High on Inj., 742.)

6. No injunction will be granted to prevent injury that is eventual and contingent. (High on Inj , secs. 742, 774; Dumesnil v. Dupont, 18 B. M., 806; Hahn & Harris v. Thornberry, 7 Bush, 405 )

7. The long acquiescence is a sufficient reason for denying the injunction. (Louisville Coffin Co. v. Warren, 78 Ky., 406.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The plaintiffs, some twenty-five in number, filed their action in the Louisville Law and Equity Court, setting up that they were in the possession as owners and tenants of certain premises in proximity to a lot and the improvements thereon, owned by the defendants, and situated on Main and Rowan streets, between Twenty-second and Twenty-fourth streets, in the city of Louisville; that the last-named property had originally been owned by one Nomberger, who resided on it until in about 1872, when it became

the property of Bloom & Ullman, who had it occu-
pied by tenants for residences until in March, 1879,
when they leased it to one Brohm for the term of
ten years, to be used by him as a pleasure resort
and beer garden; that Brohm erected certain frame
structures on the premises, consisting of a dancing
hall, a ten-pin alley, bar-rooms, open air orchestra
stands, and other improvements, at a cost of some
six thousand dollars, but failing, in 1880, to comply
with his contract, Brohm surrendered the premises
to the former owners, Bloom & Ullman, who there-
upon, and continuously up to July, 1890, rented them
to various persons for the purpose of conducting there-
in a pleasure resort and beer garden; that "during
the ten years since the lot has been used as a place of
entertainment, it has, from the nature of the business
conducted therein, become and been a nuisance to the
citizens who owned and rented residences in the neigh-
borhood." That crowds gathered there during these
years, and "the guests would dance in the dancing hall
to the music of string and brass bands stationed in the
hall and in the open orchestra-stand in the garden until
the hours of morning, while others would amuse them-
selves by rolling ten-pins in the ten-pin alley; and the
noise made by the stamping of feet of the dancers,
by the directions to the dancers given in loud sten-
torian voice, by the instruments of the orchestra and
by the balls of the ten-pin alley would keep the neigh-
bors and their families awake or disturb their sleep
for several nights in the week, so as to endanger and
impair the health of the more nervous members of
the families, and destroy their comfort and peace and

render impossible the quiet enjoyment of domestic life." That crowds of idle and disorderly spectators were drawn by the music, and their habitual presence in the streets became to the neighbors a source of annoyance and a nuisance, all of which occurred, not by reason of any careless or disorderly management of the place by those in charge, but necessarily out of the character of the business conducted there. That from July, 1890, until June, 1891, the premises were not put to this use; that in June, 1891, the plaintiffs and others in the vicinity, learning that Bloom & Ullman had rented the garden to a certain society for June 24 for a picnic, filed a remonstrance with the common council of the city against the issual of a license to hold such picnic, in consequence of which no license was granted. That thereupon, Ullman and the other owners promised that if the remonstrances were withdrawn, they would not in the future use the place as a pleasure resort; that the objection was thus withdrawn and the picnic held, since which time the premises have not been so used. That recently learning that the defendants, who are brewers, were negotiating for the property, [they informed them of the agreement as to the use of the property, and warned them not to buy it for the use of a beer garden; that notwithstanding this the defendants have bought the lot and improvements and have given out in speeches and threatening that they would reopen the garden as a pleasure resort and beer garden; that if permitted to do so, the reopening of the place "as a beer garden and pleasure resort will again disturb the peace, comfort and happiness of the

plaintiffs and of their families and endanger and impair the health of themselves and their families, and will render their lives during the spring, summer and autumn months miserable." That as long as "the garden and the improvements now standing in the same, are used for the purpose of a pleasure resort, for which they are adapted, or if similar structures are erected and used in similar manner, the said garden is bound to be a continuous annoyance and cause of discomfort to the people residing in the neighborhood within the distance of two squares from the defendants' lot, no matter with how much regard for the comfort of the neighbors the defendants may conduct the place." That irreparable injury will happen to them unless an injunction be granted against the threatened nuisance.

We have thus given in some detail the substantial averments of the petition, because a demurrer thereto filed by the defendants was sustained by the court and the petition dismissed. The sufficiency of this pleading is, therefore, the only question involved.

We observe, first, that it is not an actual, existing nuisance of which complaint is made, nor are the things about to be done in themselves nuisances. There can be beer gardens and pleasure resorts, music and dancing, and yet no nuisance set up. Admittedly, the conduct of such exercises or the running of such a business may result in inconvenience and annoyance to neighbors not participating. It may render the location less eligible as a place of residence for people who pay high rents, or are of "dainty modes and habits of living" (Wood's Law of Nuis-

ances, section 800); but, nevertheless, these places and modes of amusement are not to be condemned or denounced as nuisances in themselves.

"Injunctions against *threatened* nuisances," says Mr. Wood, section 797, "will seldom be granted except in extreme cases where the threatened use of property is clearly shown to be such as leaves no doubt of its injurious results."

The learned author, in support of this view, refers to the case of Dumesnil v. Dupont, 18 B. M., 804, where this court quotes with approval this language of Lord Brougham, in the case of the Earl of Ripon v. Hobart, 1 Cooper's Ch. Cases, 333: "If the thing sought to be prohibited is in itself a nuisance, the court will interfere to stay irreparable mischief without waiting for the result of a trial. But when the thing sought to be restrained is not unavoidably and in itself noxious, but only something which may, according to circumstances, prove so, then the court will refuse to interfere.   *   *   It is also very material to observe that no instance can be produced of the interposition, by injunction, in the case of what we have been regarding as an eventual or contingent nuisance." And the court declined to interfere with the erection of a powder house within a few hundred yards only of the dwelling of complainants, nothwithstanding the plaintiff's case was strongly fortified by the argument that, as "the electric fluid, the irresistible effects of which are disclosed in every thunderstorm, may, in defiance of every precaution, at any moment, cause it to explode, it cannot be doubted that if five hundred kegs

were stored in a magazine in the heart of the city, every thunderstorm would awaken an universal alarm and consternation in the minds of the inhabitants." (Cheatham v. Shearon, 1 Swan's Rep., 213.)

A much stronger appeal was thus presented to the court than we have in this case. It is at last but the fear or apprehension of danger or injury that is being urged : "When the injury complained of is not *per se* a nuisance, but may or may not become so, according to circumstances, and when it is uncertain, indefinite or contingent, or productive of only possible injury, equity will not interfere. Thus the erection of a wharf, a railroad bridge, a planing mill, a stable, a cotton-gin, a blacksmith shop, a toll-gate, a livery stable or a turpentine distillery will not be enjoined when the injury is only a possible and contingent one." (High on Inj., section 743.)

A bowling alley, billiard-room, or like place of amusement kept for gain or hire, may or may not be a nuisance according to the nature of the amusement, the manner in which the place is conducted, and its location. (Wood, section 43.) A ten-pin alley kept for public use in a village, in connection with a lager beer saloon, was held not a nuisance *per se*. (State v. Hall, 32 N. J. L., 158.) A slaughter-house, tallow factories and melting houses, soap factories, fat boiling and bone boiling establishments, have been held to be *prima facie* nuisances. It would seem from the authorities, therefore, that the opening of the grounds under consideration as a pleasure resort and beer garden is not of itself a nuisance. Whether the management may make it such is problematical.

The nuisance sought to be restrained is eventual and contingent. That when opened before, it became a nuisance, is not determinate and satisfactory evidence that it will so become in the future. It is not even alleged that it will be conducted like it was before.

In Hahn & Harris v. Thornberry, &c., 7 Bush, 403, it is held that the chancellor will not interfere by injunction when the nuisance sought to be abated or restrained is eventual or contingent, nor when the evidence is conflicting and the injury to the public or to the individual complaining, doubtful.

In Louisville Coffin Company v. Warren, &c., 78 Ky., 400, the maintenance of a smoke-stack which caused "much annoyance and discomfort by the smoke and soot" issuing therefrom, was held not to be a nuisance. One living in a city, it was said, must necessarily submit to the annoyances which are incidental to city life. In Rhodes v. Dunbar, 57 Penn. St., 274, it was well said by the learned Chief Justice: "It is a difficult matter at all times to strike the true medium between the conflicting interests and tastes of people in a densely populated city. It requires the merchant, mechanic, manufacturer, baker, butcher and laborer, as well as the wealthy, employed or unemployed citizen to constitute a city. They all have rights, and the only requirement of the law is, that each shall so exercise and enjoy them as to do no injury in that enjoyment to others or the rights of others."

Among the rights to be enjoyed, indeed we might say necessary to be enjoyed, by a large class of persons in a crowded city, is the right or privilege of

attending places of open air amusement, such as are sought to be condemned in the petition. Undoubtedly, if the operation of these grounds become a nuisance, the chancellor will, if there be no remedy at law obtainable by complainants, interfere in their behalf.

We can not say now that the objectionable floors may not be so deadened as to prevent the noise complained of, or that the voice of the dancing director may not be "toned down," or the music made less harsh. There is nothing in the state of case set up in the petition rendering this improbable. Of course, the idle and disorderly crowd of "hangers on" may easily and summarily be disposed of on complaint to the municipal authorities.

Judgment affirmed

---

Case 99—PETITION EQUITY—September 21.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.