Boyd and Others v. Board of Council of the City of Frankfort.

plied both in law and equity. See Carlisle v. Howes, 19 R., 1238, 43 S. W., 191, and 24 A. & E. En. of Law 2d Ed.), p. 780.

Judgment affirmed.

CASE 22—ACTION BY M. E. BOYD AND OTHERS AGAINST THE BOARD OF COUNCIL OF THE CITY OF FRANKFORT FOR AN INJUNCTION TO PREVENT THE ENFORCEMENT OF AN ORDINANCE.—DEC. 18.

# Boyd and Others v. Board of Council of the City of Frankfort.

### APPEAL FROM FRANKLIN CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFFS APPEAL.   REVERSED.

CITIES—ORDINANCES—CONSTITUTIONALITY— BUILDING   PERMIT—ARBITRARY POWER OF COUNCIL—NUISANCES—UNSAFE STRUCTURES—POLICE COURT—JUDGMENT—INJUNCTION—JURISDICTION—RES JUDICATA.

Held:   1. A city ordinance declaring that if any person shall erect any structure within the city limits without the consent of the common council, which would be greatly injurious to adjacent property, and destroy the comfort, convenience, peace, and reasonable enjoyment of life of adjacent residents, the same shall constitute a nuisance, and he shall be punished, etc., is unconstitutional, because giving arbitrary power to the city council.
2. The discriminatory execution of an ordinance giving the common council of a city power to issue building permits, etc., is unconstitutional.
3. Under Kentucky Statutes, 1899, section 3290, subsecs. 24-26, giving cities of the third class power to regulate and prohibit the erection of wooden buildings and to regulate the construction of all buildings in the city, and prevent the construction of unsafe buildings, etc., a city has no authority to prohibit the erection of a brick church building with a slate roof, made as nearly fire proof as practicable.
4. Under Kentucky Statutes, section 3290, subsecs. 14, 16, empowering cities of the third class to regulate, restrain, and prevent

the establishment of any business offensive to the public or dangerous to health, and to make all police regulations to secure and protect the general health, comfort, convenience, morals, and safety of the public, and to define, declare, prevent, and suppress and remove nuisances, a city has no authority to declare a church building to be erected by a colored congregation to be a nuisance on the ground that the method of worship employed by the congregation in the building then occupied was so noisy as to be disagreeable to residents in the vicinity.

5. Where a city ordinance affects a large number of people, one of the number affected is entitled to prosecute a suit for injunction to prevent its enforcement.

6. Where a suit was brought to enjoin a judgment of a police court under an ordinance alleged to be unconstitutional, the main purpose of the action being to attack the ordinance, the circuit court had jurisdiction thereof.

7. A contractor employed to erect a building sued to enjoin judgment against him in a prosecution before the police judge under an ordinance prohibiting such building on the ground that the ordinance was invalid. The action was dismissed on the ground that the police judge before whom the prosecution was pending would determine the question of the validity of the ordinance. Pending this determination another ordinance of the same general purport was passed, and after the termination of the prosecution against the contractor plaintiffs sued to enjoin prosecutions against them under the second ordinance. HELD, that the first suit did not render the question of the validity of the second ordinance *res judicata*, since the parties were not the same, and the validity of the second ordinance was not involved in the first suit.

HAZELRIGG & CHENAULT, FOR APPELLANTS.

The issues tendered in this suit arise on the following ordinance of the city of Frankfort:

"That if any person or persons shall proceed to erect any structure or building within the city limits, without the consent of the city council, and said structure or building (when used for the purpose for which it is designed and intended) would be greatly injurious to adjacent property and destroy the comfort, convenience, peace and reasonable enjoyment of life of adjacent residents, the same shall be deemed to be and to constitute a nuisance, and they shall be punished by a fine of not less than five nor more than twenty dollars, and each day

they may proceed with the erection of said structure or building shall be deemed a separate offense, and upon conviction it shall be the duty of the police officers to remove said structure or any part thereof at the expense of the owner."

We contend that it is beyond the power of a police court and an exercise of an arbitrary power to hold that a church building to be used for the worship of God would be a nuisance, and that it was beyond the power of the municipal authorities to declare a church building to be a nuisance when it might not be a nuisance when worship was conducted therein in a decent and orderly manner.

We submit that the ordinance fixes no standard by which the action of the city council, in granting its consent, is to be controlled. On the contrary, the consent of the council can be given or withheld at its own arbitrary pleasure.

We contend that even if the ordinance on its face is valid, a discriminatory execution of it would violate common justice, and certainly violates both the Federal and State Constitutions.

Here a brick building practically safe from fire and free from danger to the public, is about to be erected where citizens of Kentucky and of the United States may meet together to worship God according to the dictates of their consciences—a right guaranteed to every citizen, white or black. Permission is denied for no other reason than that the worship thereafter to be conducted is objectionable to the immediate neighbors. It is useless to disguise the fact that this objection to the erection of the building is based upon race prejudice, which, while it may be entirely natural and reasonable from the standpoint of Kentuckians, is nevertheless obnoxious to the eye of the law, and broadly speaking, is not justified in morals or in law in any Christian country.

### AUTHORITIES CITED.

Newport v. Newport Bridge Co., 90 Ky., 193; South Covington, &c. v. Berry, 93 Ky., 43; Ewing v. City of St. Louis, 5 Wall., 413; Pfingst v. Senn, 94 Ky., 556; Yeck Wo. v. Hopkins, &c., 118 U. S., 356; State v. Tenant, 15 L. R. A., 423.

IRA JULIAN, ATTORNEY FOR APPELLEE.

The Legislature has wisely delegated to municipalities the "police power" of the State in the regulation of their local affairs, and controversies like this must necessarily be remitted to the local municipal government.

The rights of owners of property in cities are not absolute, but *relative* and *qualified* by the familiar rule that the owner must "so use his own as not to injure the rights of others."

Therefore, every city charter under what is commonly called the "general welfare" clause, has delegated to the council the full power, by ordinance to make all police regulations to secure and protect the general health, *"comfort" "convenience,"* morals and safety of the citizens.

Under this broad power alone (saying nothing of the power to prevent nuisances), the city council of Frankfort had ample power to enact the ordinance in controversy.

It is usually *not the building itself* that does the injury and injustice to the neighbor, but it is the character of the *occupation* and *use* of the building which destroys the comfort and convenience of the neighbor.

On this motion to dissolve the restraining order of the circuit clerk, the charge of *"arbitrary"* and *"oppressive"* action on the part of the municipal officers, is entirely assumed and unfounded in fact, and is only an effort to *disregard and defy* the enforcement of a reasonable city ordinance against nuisances and they imagine it is a discrimination.

### AUTHORITIES CITED.

C. & O. R. R. Co. v. Reasor, 84 Ky., 369; Mallory v. Danbers, 83 Ky., 244; Pembroke v. Waugh, 12 R., 294; B. L. Turnpike Co. v. Phillips, Judge, 81 Ky., 613; Barbeir v. Connelly, 113 U. S., 27; Boon Heng v. Crawley, 113 U. S., 703; Butcher Union v. Crescent City, &c., 111 U. S., 746; Dillon on Mun. Corp., sec. 311; Pfingst v. Senn, 94 Ky., 556; Albany Church v. Wilburn, 112 Ky., 507, Kentucky Statutes, sec. 3290.

Opinion of the court by JUDGE SETTLE—Reversing.

This action was instituted and an injunction obtained by the appellants for the purpose of preventing the enforcement by the appellees, city of Frankfort, its officers and agents, of an alleged void ordinance, and incidentally for the further purpose of restraining certain prosecutions then pending in the police court against the appellants, as well as others of a like kind with which they were threatened, all for alleged violations of the ordinance in question. It is, in substance,

averred in the petition: That the appellants are residents
and citizens of the State of Kentucky and of the United
States, and belong to the negro race.    That they are trus-
tees of the First (colored) Baptist Church in the city of
Frankfort, which church is a voluntary association, com-
posed of a congregation of the negro race, whose purpose
has been and is to engage in the worship of Almighty God
according to the dictates of their own consciences.    That
there are several hundred members of this church, all having
a common interest with the appellants, for which reason,
and because of its being impracticable to make them all par-
ties, the action was instituted by the appellants for them-
selves and the other members of the church, and also as trus-
tees of and for the church.    That the appellants are
owners, as trustees of the First Baptist Church, of a cer-
tain lot of ground in the city of Frankfort situated on the
northeast corner of Clinton and High streets, of which lot
they became the owners for the purpose of erecting a church
thereon for the use of the First (colored) Baptist Church,
which was and is to be of brick, with slate roof, and as
nearly fireproof as practicable.    That, after purchasing the
necessary materials, and entering into the necessary con-
tracts with certain persons for the erection of the church
building, but before beginning its erection, the appellants,
acting upon advice and according to custom, applied to the
common council of the city of Frankfort for permission to
erect their church building, but were arbitrarily and illegal-
ly refused the right to do so, and when appellants, through
their contractors and employes, went upon the lot where the
church building was to be erected, and were about to tear
down an old building thereon preparatory to the erection
of the church, and were engaged in the work of constructing
the foundation therefor, the appellee city, through its mayor,

swore out a warrant of arrest for the appellants, its con-
tractors and employes, which warrant, when issued by the
police judge, was executed by a police officer of the appellee
city by arresting the appellants and their workman, and
taking them before the police judge, who tried them under
the warrant upon the charge of violating an alleged ordi-
nance of the city which required them and all others to
obtain a building permit before erecting any building in the
city of Frankfort.     It is further averred that after the
trial of appellants and their workmen by the police judge,
he, without then rendering his decision, took the case under
advisement, but subsequently rendered a judgment to the
effect that it was not a valid or enforceable ordinance; con-
sequently the appellants and other defendants in that prose-
cution were held not guilty, and were therefore discharged.

It also averred that during the time the police judge
had the case mentioned under consideration, and before its
decision by him, the following ordinance was enacted by the
common council and approved by the mayor, viz.:

"An ordinance to provide for the punishment of persons
erecting or maintaining nuisances, and for the removal of
same.

"Be it enacted by the Common Council of the City of
Frankfort:

"Section 1. That if any person or persons shall proceed
to erect any structure or building, within the city limits, with-
out the consent of the common council, and said structure
or building (where used for the purpose for which it is
designed and intended) would be greatly injurious to ad-
jacent property, and destroy the comfort, convenience, peace
and reasonable enjoyment of life of adjacent residents, the
same shall be deemed to be and constitute a nuisance, and
they shall be punished by a fine not less than $5.00, nor more

Boyd and Others v. Board of Council of the City of Frankfort.

than $20.00, and each day they may proceed with the erection of said structure or building, shall be deemed a separate offense, and upon conviction, it shall be the duty of the police officers to remove said structure, or any part thereof, at the expense of the owner.

"Section 2.   This ordinance to take effect and be in force from and after its passage, and all ordinances or parts of ordinances in conflict herewith are hereby repealed."

The further averment is made in the petition that the appellants and their employes were, by the procurement of the appellees, again arrested under warrants issued by the same police judge, and served by the same police officers, upon the charge of violating the ordinance supra, because they were attempting to proceed with the work of erecting their church building, and upon being tried therefor they were fined $5 each, and each adjudged to pay $5.80 costs; that they are threatened with further prosecutions from the same source and for the same cause, and, as the maximum fine prescribed by the ordinance is $20, which is less than an amount from which an appeal is allowable under the law, their only remedy is the writ of injunction.    It is also averred by the appellants that the ordinance complained of was adopted by the common council of the appellee city. pending the decision of the police judge in the cases arising out of the warrant first issued, and that it was adopted for the express purpose of preventing the appellants from erecting their church building, and solely because the church membership is composed of negroes; that, by its enforcement the appellants and their fellow-church members are and will be deprived of the equal protection of the laws, and are being discriminated against in the enjoyment of their civil and religious rights under the Constitution of the State and United States, and that the ordinance, if upheld, will de-

prive them of their liberty and property and the use of the latter, without due process of law, and will deny them equal protection under the law, contrary to the fourteenth amendment of the Constitution of the United States, and especially to the Bill of Rights, section 2 of the Constitution of this State, wherein it is declared that "absolute and arbitrary power over the lives, liberty and property of freeman exist nowhere in a republic, not even in the largest majority." The additional averment is made in the petition that the ordinance in question is inadequate, uncertain of meaning, and ambiguous; that it is likewise oppressive, unreasonable, arbitrary, and void.

The appellee board of councilmen filed separate answer to the petition, in which they failed to deny the arrest and trial of the appellants set forth in the petition, or that they had been interfered with as alleged in the work of erecting their church building; nor do they deny that the ordinance complained of was adopted by them after the arrest and trial of appellants under the first warrant, and before the judgment of the police judge was rendered, acquitting them of the charge in that warrant. But the answer does deny all the averments of the petition in regard to the alleged purpose of the enactment of the ordinance, or that it is open to the constitutional or other objections urged against its validity by the appellants. It also denies that the refusal of the common council to grant appellants permission to erect the church was arbitrary, and aver that the refusal was made in the exercise of a sound discretion, and because appellants did not have the written consent of a majority, or, in fact, of any, of the citizens and property owners residing within 200 yards of the place of the proposed building to its erection, as required by an ordinance of the city; and, further, that the church proposed

to be erected by the appellants will constitute a nuisance, because the mode of worship practiced by its members is and will be so boisterous, loud, and unseemly as to interfere with the peace and quietude of the citizens and property owners residing adjacent to the church.     The answer also interposes the plea of res judicata, as it is therein averred that the same matters and issues involved in this action were ligitated and tried in a previous suit between the same parties before a special judge, whose decision was adverse to the appellants, and the judgment in the alleged former action is pleaded in bar of this one.     The appellees mayor, police judge, chief of police, and city marshal also filed an answer to the petition, in which they adopted the averments of the answer of the board of councilmen, and in addition set out the facts with reference to the second arrest and trial of the appellants.

Demurrers were filed by the appellants to the answers, and each paragraph thereof, which were overruled by the lower court.     Thereupon the appellants filed reply controverting the material averments of the answers. By mutual consent of the parties the evidence was all taken in the form of affidavits, and, the cause having been submitted upon the pleadings and affidavits, judgment was rendered by the lower court dismissing the petition, and allowing the appellees their costs, the temporary restraining order having theretofore been dissolved by the court on appellee's motion.

The case being before this court on the appeal, we will consider first the objection urged to the constitutionality of the ordinance by virtue of which it is contended by the appellees that the common council of the city of Frankfort had the right to refuse appellants permission to erect the church upon the lot owned by them.     A careful reading of the ordinance will show that it fixes no standard by which the

208        KENTUCKY REPORTS.        [Vol. 117

Boyd and Others v. Board of Council of the City of Frankfort.

action of the city council in granting or refusing its consent is to be controlled.    The consent of the council can be given or withheld at its own arbitrary pleasure.    This ordinance, though far more arbitrary, is very similar to those mentioned in the case of Yick Wo v. Hopkins, etc., 118 U. S., 356, 6 Sup. Ct., 1064, 30 L. Ed., 220.    The ordinances in that case contained provisions to the effect that it should be unlawful for any person or persons to carry on a laundry within the limits of the city of San Francisco without first having obtained the consent of the municipal authorities, except the same be located in a building constructed either of brick or stone; and unlawful to erect scaffolding over or upon the roof of any building without first obtaining such consent. In commenting upon the arbitrary provisions indicated, the supreme court said: "There is nothing in the ordinances which points to such a regulation of the business of keeping and conducting laundries.    They seem intended to confer, and actually do confer, not a discretion to be exercised upon a consideration of the circumstances of each case, but a naked and arbitrary power to give or withhold consent, not only as to places, but as to persons.    So that, if an applicant for such consent, being in every way a competent and qualified person, and having complied with every reasonable condition demanded by any public interest, should failing to obtain the requisite consent of the supervisors to the prosecution of his business, apply for redress by the judicial process of mandamus to require the supervisors to consider and act upon his case, it would be a sufficient answer for them to say that the law had conferred upon them the authority to withhold their assent without reason, and without responsibility.    The power given to them is not confided to their discretion in the legal sense of that term, but is granted to their mere will.    It is purely arbitrary, and acknowledges

neither guidance nor restraint. . . . No reason for it is shown, and the conclusion can not be resisted that no reason for it existed except hostility to the race and nationality to which the petitioners belong, and which, in the eye of the law, is not justified. The discrimination is therefore illegal and the public administration which enforces it is a denial of the equal protection of the laws, and a violation of the fourteenth amendment of the Constitution. The imprisonment of the petitioners is therefore illegal, and they must be discharged." The very fact that the ordinance complained of in this case confers upon the council the absolute right to refuse its consent to the erection of any building, no matter out of what material it is to be constructed, where it is to be erected, or how necessary and useful to the public it might be, demonstrates the danger of intrusting any body of men with such arbitrary and despotic power. The circumstances surrounding its adoption by the council, and the fact that its aid was immediately invoked to justify the refusal of a building permit to the appellants, would seem to indicate that the enactment of the ordinance was and is a mere pretext for the arbitrary and unreasonable refusal of appellees to permit this building to be erected. If such was the purpose of its enactment, as well said by counsel for appellants, their imprisonment in satisfaction of the fines imposed upon them for the violation of its provisions would be as arbitrary and unjust as was the arrest of the Chinamen in the Yick Wo-Hopkins case. It must not be overlooked that, even if the ordinance on its face is valid, a discriminatory execution of it would be violative of both the federal and State Constitutions, and subversive of justice as well.

The refusal of the common council of a building permit to the appellants in this case is attempted to be justified

upon the ground that the erection of the church and the holding of worship therein by the congregation would constitute a nuisance, and therefore that the council, under the "police power" that may lawfully be exercised by the municipality for the welfare of the public, has the legal right to abate or prevent nuisances. The only provisions of the charter of cities of the third class on the subject of buildings are found in subsections 24-26 of section 3290, Ky. St., 1899. These confer the following powers:

"24. Wooden Buildings—To prevent Erecting and Provide for removal of. To regulate or prohibit and prevent the erection of wooden buildings in such parts of said city as may be deemed proper, and to provide for the removal of the same at the cost of the owners, when erected or continued contrary to ordinance.

"25. Buildings—Regulating Construction of. To regulate the construction of all buildings in the city, to prohibit and prevent the construction of unsafe buildings, or buildings without adequate means of escape in case of fire, and to provide for the inspection of buildings and the construction of fire escapes.

"26. Removal of Dangerous Structures. To impose penalties upon the owner, occupant or agent of any house, wall, side walk, or other structures which may be considered dangerous or detrimental to the public, unless after due notice, to be fixed by ordinance, same to be remedied or repaired; and to remove or repair same at the owner's expense when suffered to remain contrary to ordinance."

It will hardly be claimed that a church building to be constructed of brick, with a slate roof, and as nearly fireproof as practicable, like that of the appellants, can be dangerous or detrimental to the public health or safety. The powers conferred on cities of the third class on the subject of nui-

Boyd and Others v. Board of Council of the City of Frankfort.

sances are found in subsections 14 and 16, section 3290, of the statutes, supra, which read as follows:

"14. Nuisances, Restraining and Preventing.    To regulate, restrain or prevent the establishment or continuance in or near said city of any trade, or occupation, business or manufacturing, offensive to the public, or dangerous to health, or in causing or producing fire; and to regulate the sale of fire arms, and to prevent the carrying of concealed deadly weapons."

"16.    Police Regulations, Health, Comfort and Safety.    To make all police regulations to secure and protect the general health, comfort, convenience, morals and safety of the public; and to define, declare, prevent suppress and remove nuisances, either within the city, or within one mile thereof."

The term "nuisance" has a well defined legal meaning. A thing can not be declared a nuisance which is in fact not a nuisance.

In Brannon's treatise on the Fourteenth Amendment, it is said that "a municipal corporation can not treat as a business that which can not be such" (page 174), and that "a city or town can not, by its mere declaration that a thing is a public nuisance, make a nuisance of that which is not essentially such.    The question of nuisance or no nuisance is one for judicial review."

In the case at bar it is contended for appellees that the ordinance, which manifestly was passed to prevent the erecting of the appellant's church building, confers upon the common council the power to declare that a church building not yet erected, and which, when erected, will not be a nuisance, is a nuisance.    If it be possible that the colored Baptist people can hold their church services in an orderly way, then the building of their church can not be held to be a nuisance. In Pfingst v. Senn, 94 Ky., 556, 15 R., 325; 23 S. W.,

212                KENTUCKY REPORTS.               [Vol. 117

Boyd and Others v. Board of ·Council of the City of Frankfort.

358; 21. L. R. A., 569, this court held that: "Injunction against
a threatened nuisance will not be granted when the thing
complained of is not per se a nuisance, but may or not be-
come so according to circumstances, and when it is uncertain,
indefinite or contingent, or productive of only possible injury.
·The opening of a beer garden, dancing hall, and bowling
alley in a city will not be enjoined, although the same place·
of amusement, as formerly conducted, may have been a nui-
sance."    It would be strange, indeed, to find it announced
in the law books, or authoritatively declared by any court
of final resort that a beer garden or dancing hall may exist
in a city, yet a brick, fire-proof church may not be erected
or maintained therein; and, as argued by counsel, is the fact
that the members of the First (colored) Baptist Church
sang louder in their old and dilapidated building than was
agreeable to some of the contiguous residents any evidence
that such would be their manner of singing in the new one?
In Albany Christian Church v. Wilburn, 112 Ky., 507, 23 R.,
1820; 66 S. W., 285, this court, in discussing whether a sta-
ble was a nuisance, quoted with approval from St. James
Church v. Arrington, 36 Ala., 546, 76 Am. Dec., 332,
wherein it is said:    "Whenever it is legally ascertained
that it has become a nuisance, a court of equity will protect
by injunction the party injured thereby.    But as, in the
present case, it is yet uncertain, and remains to be ascertain-
ed from future events, whether or not the erection will be-
come a nuisance, there is no ground for injunction arrest-
ing the further progress of the building, or its appropriation
to the use intended."    In view of these authorities, the
police judge was without power to hold, and the common
council of the city of Frankfort in rejecting appellant's re-
quest for a permit to erect the church building, was without

authority to declare, a house to be erected and dedicated to the worship of God a nuisance.

There can be no doubt of the right of appellants to main-tain this action.    The law authorizing it has been repeated-ly declared by this court.    Thus, in city of Newport v. New-port, etc., Bridge Co., 90 Ky., 193, 12 R., 39; 13 S. W., 720 8 L. R. A., 484; it was held that: "If a city ordinance is invalid, one who is affected by it has the right, in order to prevent irreparable injury and a multiplicity of prosecutions, to go into a court of equity for relief."    The court also said in the same case:    "The chancellor often interferes to pre-vent an illegal use of power by municipal authorities, and, where such consequences follow the enforcement of an or-dinance, as will result in this instance, a proper case is presented for equitable relief if the ordinance be invalid." To the same effect is the rule announced in South Coving-ton, etc., v. Berry, etc., 93 Ky., 43, 13 R., 943, 18 S. W., 1026; 15 L. R. A., 604; 40 Am. St. Rep., 161, wherein the court said:    "The appellees, the mayor and chief of police of the city, being about to enforce an ordinance by having the company's officers arrested and its cars returned to the stable, this action was brought enjoining it.    If the ordi-nance was invalid, then, to prevent a multiplicity of prosecu-tions, and such consequences as would necessarily result from its enforcement, the company had the right to ask the pre-ventative equitable relief.    This is often done to prevent the illegal exercise of power by municipal authorities."    It is, however, contended for appellees that this action is only to enjoin a judgment of the police court, and such an action under the Civil Code can be brought only in the court which rendered the judgment sought to be enjoined.    Manifestly, that rule can not apply here, as the police judge in cities of the third class is wholly without civil jurisdiction.    But,

in any event, the main purpose of this action is to attack the validity and constitutionality of the ordinance under which the appellants' property rights have been arbitrarily interfered with—in fact, denied them—in contravention of both the Federal and State Constitutions. The enjoining of the judgment of the police court is therefore only an incident—a side issue growing out of the principal transaction complained of in the petition.

It is further insisted for appellees that the issues presented in this action are res adjudicata; that is, that they were determined in the first suit tried by the special judge. It is averred in the reply, which does not appear to be controverted, that the first or old suit, which was brought by Buckley, contractor, of the church building, and others, to enjoin the city from enforcing an ordinance of older date than the one now complained of, was tried by the special judge, who seems to have dismissed that action upon demurrer to the petition, and because he assumed that the police judge before whom were then pending the prosecutions against Buckley and others, involving the validity of that ordinance, would determine that question. It appears, however, that the first suit did not embrace some of the parties to this action. It also involved the validity of a different ordinance, and the police court had not then passed on the validity of the old ordinance. That court did subsequently hold it invalid. In the meantime the present ordinance, the validity of which is attacked, in this action, was adopted by the council pending the decision of the police judge on the validity of the old one. We are of the opinion, therefore, that the defense of res adjudicata is not available.

We have reached the conclusion that permission to erect the church building was denied the appellants for no other

ıeason than that the worship therein, and thereafter to be conducted, was and will be objectionable to the immediate neighbors; and the further fact is not to be disguised ·that this objection to the erection of the building is largely based upon race prejudice.  However natural this prejudice may be, when it superinduces unjust discrimination in the adjustment of mere legal rights, it becomes obnoxious to the law.

The questions arising upon this record present no disturbing social problem.  The matters to be adjudicated are purely legal in character.  Undoubtedly, it can be shown that the presence in a neighborhood of a church for colored people is not desirable to the surrounding property holders of the white race, but it can not be more disagreeable than the near presence to one's residence of a noisy manufactory, beer garden, dancing hall, or other obnoxious trades, which are so generally tolerated in all cities.  "One living in a city must necessarily submit to the annoyances which are incidental to city life.  It is a difficult matter at all times to strike the true medium between the conflicting interests and tastes of people in a densely populated city. It requires the merchant, mechanic, manufacturer, baker, butcher and laborer, as well as the wealthy employed or unemployed citizen, to constitute a city.  They all have rights, and the only requirement of the law is that each shall so exercise and enjoy them as to do no injury in that enjoyment to others, or the rights of others."  Pfingst v. Senn, etc., 94 Ky., 563, 15 R., 325, 23 S. W., 358, 21 L. R. A., 569. Being of the opinion that the ordinance complained of is unconstitutional for the reasons hereinbefore stated, and that the prosecution of the appellants in the police court, as well as the refusal of the council to permit them to erect their church building attempted to be justified under

such ordinance, were unauthorized by law, the judgment of the lower court is reversed, and cause remanded, with directions to that court to grant appellants the relief asked, to perpetuate the injunction, and for such other proceedings as may not be inconsistent with this opinion.