[Crim. No. 744. Second Appellate District, Division Two.—December 31, 1920.]

In the Matter of the Application of MARK HALL for a Writ of Habeas Corpus.

[1] MUNICIPAL ORDINANCE—REGULATION OF HOURS OF DANCING—CONSTITUTIONAL LAW.—A municipal ordinance providing that between the hours of 10 o'clock P. M. and 8 o'clock A. M. of the next succeeding day it shall be unlawful for any person, firm, or corporation in control of any room or hall, any portion of which or any window of which is within twenty-five feet of any portion of any building used as the residence of any person other than the person in control of such room or hall, to conduct or permit dancing or the performance of any dance-music in such room or hall, is unreasonable and oppressive, in that it unduly and unwarrantably interferes with personal rights and the right to the enjoyment and reasonable use of property guaranteed by the fourteenth amendment of the constitution of the United States and section 1 of article I of the state constitution.

APPLICATION for a Writ of Habeas Corpus to secure release from imprisonment under a warrant charging vio-

---

1. Power of municipality to regulate dancing in public places, notes, Ann. Cas. 1915C, 1110; L. R. A. 1917A, 1174.

Dancing as proper subject for exercise of police power, note, L. R. A. 1917E, 318.

lation of municipal ordinance regulating dancing. Granted and petitioner discharged.

The facts are stated in the opinion of the court.

Wilton W. Webster for Petitioner.

James H. Howard for Respondent.

FINLAYSON, P. J.—Petitioner is imprisoned under a warrant of arrest issued out of the police court of the city of Pasadena upon a complaint charging him with a violation of an ordinance entitled "An ordinance of the city of Pasadena regulating the hours during which dancing may be conducted and dance-music performed in certain places." So far as material, the ordinance reads: "Between the hours of 10 o'clock P. M. and 8 o'clock A. M. of the next succeeding day, it shall be unlawful for any person, firm or corporation in control of any room or hall, any portion of which or any window of which is within twenty-five (25) feet of any portion of any building used as the residence of any person other than the person in control of such room or hall, to conduct or permit dancing or the performance of any dance-music in such room or hall." The ordinance further provides that any person convicted of a violation thereof shall be punishable by a fine of not more than five hundred dollars, or by imprisonment for not more than six months, or by both such fine and imprisonment.

[1] Petitioner contends that the ordinance is unreasonable and oppressive, that it unduly and unwarrantably interferes with his personal rights and with his right to the enjoyment and reasonable use of his property, and, therefore, is violative of the fourteenth amendment and likewise section 1 of article I of the state constitution. This contention, we think, must be upheld.

The ordinance does not confine the prohibited acts to any particular locality, or to buildings in any particular part of the city; nor does it differentiate between public dance-halls—admittedly proper subjects for reasonable regulation in the exercise of the police power—and rooms in private homes wherein dancing may be conducted or dance-music performed for the amusement and enjoyment of the house-

holders, members of their families and guests. Instead, the ordinance covers and includes any and all rooms or halls within the boundaries of the municipality, any portion of which or any window of which is within twenty-five feet of any portion of any other building used as a residence. So that if, forsooth, the owner, lessee, or lawful occupant of any private residence should so far forget himself as to permit members of his own family or invited guests to indulge in the innocent amusement of dancing in any room in his own home that happens to be within twenty-five feet of any part of his neighbor's residence, or permits them to listen to the soft strains of waltz music played in such room, his temerity possibly may cost him a fine of five hundred dollars and six months in jail as a common malefactor. To construe the ordinance as covering only public dance-halls or as inhibiting only boisterous dancing and loud and discordant music, would be but a mere arbitrary decision of the court, and, in effect, amount to a redraft of the ordinance to make it conform to what, in the view of the court, the city commissioners ought originally to have made it.

A consideration of a few of the fundamental principles underlying the police power will suffice to answer respondent's contention that the ordinance in question is a valid exercise of that power.

There can be no serious question respecting the authority of the city to enact and enforce ordinances designed to prevent boisterous conduct and loud, unusual, and discordant sounds that cause public annoyance or menace the public comfort and welfare. To that end any municipality may prohibit, within reasonable limits, the use of premises in such a manner as thus to menace the public comfort or welfare. Ordinances enacted for such purpose, when they do not go beyond the limits of reasonableness and unnecessarily invade the right of the citizen to acquire, possess, and enjoy property and pursue happiness, will be sustained. But to justify legislative interference with property rights under the guise of an exercise of a police power, and to prohibit the citizen from a reasonable enjoyment of a lawful amusement on his own premises, it should plainly appear that the manner in which the property is used does menace the public welfare. Legislation which goes beyond that limit exceeds the rule of reasonableness. Laws which impose penalties on

persons and interfere with the personal liberty of the citizen cannot be constitutionally enacted, unless the public health, comfort, safety, or welfare demands their enactment.

It is for the law-making body to determine when an exigency exists for the exercise of the police power, but what are the subjects of its exercise is clearly a judicial question. The exercise of legislative discretion is not subject to review by the courts when measures adopted by the legislative department are calculated to protect the public health and secure the public comfort, safety or welfare; but the measures so adopted must have some relation to the ends thus specified. The law-making body of a municipality has no power, under the guise of police regulation, arbitrarily to invade the personal rights and personal liberty of the individual citizen. Its determination upon this question is not final or conclusive. If it pass an ordinance ostensibly in the exercise of the police power, but which in fact interferes unnecessarily with the personal liberty of the citizen, the courts have a right to examine the law and see whether it relates to the objects which the exercise of the police power is designed to secure, and whether it is appropriate for the promotion of such objects. When the police power is exercised for the purpose of prohibiting a lawful amusement or regulating the manner in which it may be carried on or enjoyed, the law-making body is not the exclusive judge as to what is a reasonable and just restraint upon the constitutional right of the citizen to enjoy his personal rights and use his own property in his own way. The general right of every person to enjoy his own property and engage in any lawful and innocent amusement therein, and to do so in his own way, provided he does not encroach upon the rights of others, cannot be taken away from him by legislative enactment or municipal ordinance. (Tiedeman on Limitation of Police Power, sec. 3; *Ex parte Whitwell*, 98 Cal. 73, [35 Am. St. Rep. 152, 19 L. R. A. 727, 32 Pac. 870].) As said by the New York court of appeals in *Matter of Jacobs*, 98 N. Y. 108, [50 Am. Rep. 636], the police power, "however broad and extensive, is not above the constitution. When it speaks its voice must be heeded."

There is no certain test whereby the reasonableness of a police measure may be definitely measured in any given case. It is a matter resting in human judgment. So the

line between what is reasonable and what is not, marking the bounds of the constitutional authority of the legislative department, is one often difficult of ascertainment, rendering it necessary, in all doubtful cases, for the judiciary to defer to the wisdom of the law-making body. But when the boundary has been plainly passed, the duty of the court to repel the encroachment and so uphold the constitution is absolute. It has no discretion in the matter. "Reasonableness" is not synonymous with "expediency." Matters of expediency are wholly for legislative cognizance; while reasonableness is subject to judicial inquiry. As applied to a law, "reasonableness" is manifestly not what extremists upon the one side or the other would deem fit and fair. As it is well put in one of the cases, reasonableness is· what "from the calm sea level" of common sense, applied to the whole situation, is not illegitimate in view of the end attained. In *Ex parte Whitwell, supra,* the court said: "Legislation of this character . . . cannot be justified by the mere possibility of the danger which it ostensibly seeks to avert. It must rest upon the fact that experience has demonstrated that such danger, in the absence of such legislative regulation, is one which may reasonably be anticipated as the probable result of conducting such business, notwithstanding the exercise of ordinary care to prevent it."

If people prefer living in a city, they can only do so because of others desiring to do the same thing in sufficient numbers to constitute a city, and each tacitly undertakes to suffer such annoyances or inconveniences as are incident to that kind of a community. Such a community is made up of all kinds and classes of persons, whose various tastes and habits of life are of almost infinite variety. Of all such is the average city constituted. They all have rights, and the only requirement of the law is that each shall so exercise and enjoy his rights as to do no injury to others, or the rights of others, in the sense in which the law regards "injury," namely, accompanied by damage. In *Ex parte Whitwell, supra* (98 Cal. 83, [35 Am. St. Rep. 152, 19 L. R. A. 727, 32 Pac. 870]), the court said: "There are many unpleasant and even annoying things which must be borne by persons living in a state of organized society, in order that others may also enjoy their equal rights under the law." (See, also, *Rhodes* v. *Dunbar,* 57 Pa. St. 274, [98 Am. Dec.

224], and *Pfingst* v. *Senn,* 94 Ky. 556, [21 L. R. A. 571, 23 S. W. 358].) The two cases last cited, it is true, did not present a question respecting the validity of an ordinance or statute passed in an attempted exercise of the police power. They were cases wherein the plaintiffs complained of an alleged private nuisance. But even so, it is a well-recognized principle, applicable alike to ordinances and other forms of legislation, that, in determining whether a police regulation is reasonably necessary to secure the public comfort or welfare, and therefore within the legitimate exercise of the police power, existing habits and customs are of great weight. (*City of Passaic* v. *Patterson etc. Co.,* 72 N. J. L. 287, [111 Am. St. Rep. 678, 5 Ann. Cas: 995, 62 Atl. 267]. See, also, *Matter of Frazee,* 63 Mich. 396, [6 Am. St. Rep. 310, 30 N. W. 72].)

Turning now to the ordinance in question, and viewing it in the light of the foregoing: From time immemorial, it has been customary in all free countries and in most civilized lands for people to enjoy themselves in their homes by dancing and listening to dance-music. Any police measure that would hold these amusements legally objectionable in themselves would destroy one of the purposes for which people congregate in large cities—the opportunity to meet in social intercourse and enjoy the customary social pleasures and amusements. (See *Village of Des Plaines* v. *Poyer,* 123 Ill. 348, [5 Am. St. Rep. 524, 14 N. E. 677], and *Chicago* v. *Drake Hotel Co.,* 274 Ill. 408, [L. R. A. 1917A, 1170, 113 N. E. 718].) It has never been found wise, and it is not legally reasonable, to do more than fix such general conditions to the enjoyment of these innocent amusements as are necessary to the good of the whole community.

The ordinance cannot be upheld upon the theory that it is a reasonable regulation designed to prevent a disturbance of the slumbers of the occupants of near-by residences during the hours usually devoted to sleep. Not only must the inhabitants of cities put up with such ordinary sounds as are the customary and usual incidents to such community habitation, accepting the inconveniences of urban life along with the benefits derivable therefrom, but, what is equally to the point, legislation of this character, imposing an onerous burden upon a lawful and innocuous amusement by absolutely prohibiting it in all rooms that may chance to be

within twenty-five feet of other buildings used as residences, cannot be justified by the mere possibility that disturbing and annoying sounds will endanger the public welfare. It must rest upon the fact that experience has demonstrated that the danger of such disturbance and annoyance, in the absence of such legislative regulation, is one which may reasonably be anticipated as the probable result of permitting any dancing whatever, or performing any kind of dance-music, in any hall or room any portion of which or any window of which may happen to be within twenty-five feet of any portion of any other building used as a residence. (*Ex parte Whitwell, supra.*) By suitable regulation, far less drastic than the prohibitory ordinance before us, such an innocent recreation as dancing and such an intrinsically harmless amusement as the performance of dance-music can be so conducted and performed as not to give reasonable cause for complaint even to persons of "dainty modes and habits of living." The total prohibition, therefore, of these innocent amusements, during any of the twenty-four hours, is an arbitrary and unreasonable invasion of private rights. In *Ex parte Kelso,* 147 Cal. 609, [109 Am. St. Rep. 178, 2 L. R. A. (N. S.) 796, 82 Pac. 241], the supreme court declared invalid an ordinance absolutely prohibiting the maintenance or operation of a stone quarry within a certain portion of the city and county of San Francisco. The ground of the decision was that the removal of rock from land is an operation that may be rendered entirely innocuous by proper regulation prescribing the manner of doing the work, and that, therefore, a total prohibition was an arbitrary and unreasonable invasion of private rights. "The test in every case is: Is the prohibition of a particular business or the sale of a particular article necessary to prevent the infliction of a public injury? It is not sufficient that the public sustains harm from a certain trade or employment as it is conducted by some engaged in it. Because many men engaged in the calling persist in so conducting the business that the public suffers, . . . is no justification for a law which prohibits an honest man from conducting the business in such a manner as not to inflict injury upon the public." (*Tolliver* v. *Blizzard,* 143 Ky. 773, [34 L. R. A. (N. S.) 890, 137 S. W. 509].) So here, dancing unquestionably may be so conducted and dance-music so performed, in

a private residence after 10 o'clock at night, that persons of the average nervous temperament, residing in homes situated within twenty-five feet of the room where such dancing is conducted or dance-music performed, need not be unreasonably annoyed thereby. One or two, or even more, couples might so conduct their dancing in a room, a portion of which or a window of which is within twenty-five feet of a neighboring residence, as not to jar the most sensitive nerves of the occupants of the neighboring dwelling. Who, for instance, could possibly be disturbed or annoyed by the graceful and stately minuet? Similarly, dance-music, one of Strauss' waltzes, for instance, might float into the neighboring dwelling without jarring the most sensitive human tympanum, or it might be played so softly that it would not be heard outside of the room in which performed. It should be remembered that even in these days of bizarre extremes and freak abnormalities, the muscle-tickling jazz has not yet succeeded in entirely excluding all sane dance-music from the places where the devotees of Terpsichore are wont to foregather. And experts tell us that even jazz, like certain other things fast fading into oblivion, may be denatured—a consummation devoutly to be wished. "The law," says the supreme court in *Re Farb*, 178 Cal. 592, [3 A. L. R. 301, 174 Pac. 320], "does not tolerate the prohibition of something which may be regulated in such a manner as to overcome any evils which may be incidentally connected with it."

It is not in the power of the legislative department to deprive any of the people of the enjoyment of equal privileges under the law. Nor can any city be permitted to exercise tyrannical powers. The ordinance is unreasonable because it prohibits what, in general, is perfectly lawful; it reaches and passes the limits of the city's police powers. Our conclusion, therefore, is that the ordinance should be declared unreasonable and void, leaving the city commissioners free to enact, instead, some other more specific and definite regulation.

Petitioner is discharged.

Thomas, J., and Weller, J., concurred.