## Combs et al. v. Crawford.

(Decided March 15, 1935.)

JOHN E. CAMPBELL for appellants.

C. W. NAPIER and NAPIER & EBLEN for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

McKinley Combs, one of the appellants, owns a small tract of land lying about four miles out of Hazard, which was used by it, under a contract with Combs,

as a dumping ground for its city garbage. The appellee, Henry Crawford, and his family live on an adjoining tract, their dwelling house being located about 400 feet from Combs' tract. Crawford, the nearest resident to this Combs dumping ground, complains that the city's system of garbage disposal creates such obnoxious odors and nauseous stench that the comfort of his home is disturbed and destroyed and his family's health jeopardized thereby.

In September, 1934, plaintiff, complaining of this hurtful use made of this property by the city and Combs as creating a nuisance, filed his petition against the appellants (defendants below), seeking its abatement by a perpetual injunction and for damages suffered by reason of injuries caused thereby.

By the petition he avers that the city of Hazard, codefendant below, pursuant to a contract had with the defendant Combs, uses these premises described and adjoining plaintiff's home for the purpose of a dumping ground for the city's garbage, consisting of meats, decaying vegetables and other refuse matter, which, when daily hauled out and dumped thereon, creates such unbearable odors and nauseous stenches as to poison the atmosphere for many feet around in every direction, particularly infesting and permeating plaintiff's dwelling house; that the defendants, by such wrongful use of the premises, not only so poison the atmosphere and produce such nauseous stenches as to thereby endanger the health of the plaintiff and his family, but that the odors arising therefrom are so offensive as to further destroy the comfort of their home to such an extent that they can at times neither eat nor sleep therein without closing the windows and doors. To abate this condition plaintiff prays for a temporary restraining order against the defendants, for damages in the sum of $200, and that defendants, upon final hearing, be perpetually enjoined from using the premises described as a dump for the city's garbage.

Defendants separately answered, traversing the averments of the petition, and further pleaded that the city had, upon the request of plaintiff, in May, 1934, discontinued the use of the defendant Combs' premises for a garbage dumping ground upon complaint made, and had not thereafter so used the lot until later in September, when Combs again applied for the garbage

rights and represented that he, under the instruction of Dr. Carr, the county health officer, had devised and adopted a plan whereby the use of his premises might be renewed by the city as a dumping ground for its garbage without causing injury to plaintiff by constructing an incinerator on the ground wherein would be burned daily such part of the city's garbage dumped upon the premises as was not consumed by defendant's hogs, to which it was fed; and that by so operating the dumping ground the premises could be used as such without creating a nuisance. Further, defendant pleaded that the proposed use of his premises as a dumping ground for the city's garbage was secured from the city for the purpose of maintaining a piggery thereon, which was not in itself a nuisance, but a legitimate business when properly conducted in the approved manner, as now proposed by him, and was one which would only become a nuisance where it was, as formerly, improperly conducted. So alleging, defendants claimed that the trial court had erred in granting the restraining order, enjoining their use of Combs' premises for purposes of a garbage dumping ground used for maintaining a piggery, as the effect of granting the restraining order upon these facts amounted to an improper granting of an injunction against an eventual or contingent nuisance rather than against an actual or existing one to which only the right to injunctive relief is limited.

Upon submission of the cause to the court upon plaintiff's motion for a permanent injunction, upon the pleadings and proof heard in open court, and also upon defendants' motion to dissolve the restraining order, the court, after hearing the proof introduced in support of both motions, adjudged the plaintiff was entitled to the injunctive relief sought in his petition and that the defendants be jointly and severally permanently enjoined from using defendant Combs' premises as a dump for the city's refuse and garbage and from burning the same thereon, and from in any wise using the premises in a way that would produce offensive odors and nauseous stenches, destroying plaintiff's and his family's comfort in the use of their dwelling house.

The evidence heard for the appellee conduced to show that on September 25 the defendant city of Hazard had renewed its earlier contract with the defendant Combs to use his premises as a dumping ground for its garbage and refuse matter, upon his agreement to

hold the city harmless and his representations made that its garbage, when dumped upon his premises, would be so handled by burning it in an approved incinerator (which he was constructing thereon) as to prevent its creating offensive or injurious odors. The county health officer, Dr. Carr, testified as to his having recommended such plan for handling the garbage, and that, if it were so handled and burned by the appellant, even if there might still be offensive odors caused by it, in his judgment the same would not be injurious to the health of plaintiff and his family.

On the other hand, the evidence for plaintiff is that the proposed plan for abating the trouble by burning the unused garbage has already been installed and tried out by the defendant Combs; that it has not resulted in relieving against the offensive odors and nauseous stenches as formerly created by the dumped garbage; but that, as testified by plaintiff and several other of his neighbor witnesses, the stench caused by the burning of this garbage, consisting of spoiled meats, animals, and decayed vegetation, continued to be as offensive and sickening as ever, and is still such as practically destroys the comfort and use of plaintiff's dwelling as a home.

Upon such showing made, we are of the opinion that the trial court did not improperly adjudge plaintiff the relief sought of abating the nuisance by granting the criticised perpetual injunction against the defendants.

Appellants' contention—that the adoption and following of the plan of daily burning the garbage, suggested by Dr. Carr, the county health officer, would prevent the fumes and odors created by such use of his premises only from being injurious or a menace to the health of plaintiff's family—did not go far enough when, conceding arguendo the plan's effectiveness to such limited extent or in such one respect, the evidence yet failed to further show that defendants' complained of use of Combs' premises as a dumping ground, even when the garbage was burned as advised by Dr. Carr, did nonetheless not continue to engender and diffuse such offensive fumes and nauseous stenches as to destroy the comfort of plaintiff and his family in the use of their home.

In Ashbrook v. Commonwealth, 1 Bush, 139, 89 Am. Dec. 616, the court said:

"We do not understand that the offensive odors and smells of a loathsome trade must actually produce disease to become a common nuisance; if it is detrimental to the comfort of those dwelling around it, and to the passersby, it is a nuisance, and may be abated."

In Attorney General v. Steward, 20 N. J. Eq. 415, the court said:

"Any trade or business, however lawful, which, from the place or manner in which it is carried on, materially injures the property of others, or affects their health, or renders the enjoyment of life physically uncomfortable, is a nuisance, which it is the duty of this court to restrain."

Compare also Commonwealth v. Perry, 139 Mass. 198, 29 N. E. 656, 657, where the court approved an instruction charging (in part) as follows:

"People residing in the neighborhood of this piggery have a right to have the air free and uncontaminated by odors, smells, and stenches offensive to the senses. It is not necessary for the government to show that the contamination of the atmosphere is to such an extent as to cause actual injury to health, but it will be sufficient for it to show that the smells and stenches are so offensive as to render the residences and habitations in the vicinity uncomfortable."

Further, appellants contend that, inasmuch as their maintaining this city dumping ground for supplying this piggery with garbage is not per se a nuisance but a legitimate business, if properly managed so as not to create such offensive odors as make it a nuisance, the court erred in directing it abated as a nuisance, even though it may have previously been such, when it was improperly operated without an incinerator. They cite and strongly rely upon the case of Pfingst v. Senn, 94 Ky. 556, 23 S. W. 358, 360, 15 Ky. Law Rep. 325, 21 L. R. A. 569, as supporting them in such contention. The facts, however, in that case were substantially different from those here presented. There Senn & Co. were threatening to reopen a pleasure resort or beer garden in the city of Louisville, Ky., which was alleged by the appellants to have been a nuisance when previously run as such, and that, if it were reopened, they,

as neighboring residents of the garden, would again, as before, be greatly disturbed by the noise of its amusement seekers and music, extending into the early morning hours, to the detriment of their health and comfort. To prevent these alleged anticipated, calamitous results, they sought an injunction against defendants reopening the place, which they alleged would revive the old nuisance, which inhered in the very nature of the business.

The court, holding that no actual nuisance was clearly made out by the evidence but only one threatened, denied the injunction, saying:

"When the injury complained of is not, per se, a nuisance, but may or may not become so, according to circumstances, and when it is uncertain, indefinite, or contingent or productive of only possible injury, equity will not interfere."

The facts here shown by the evidence, and from which relief is asked, do not present a case, as there, of only a possible or threatened or contingent nuisance, dependent on the circumstances under which a proposed thing or business may be used or operated or which may be productive of only possible injury, but they conduce to show an existing injury which is present and actual and has in fact arisen from defendants' use of the premises, even when and while it is being now conducted under the corrective plans defendants claim are proper for its operation. These materially different and distinguishing facts found in the instant case bring it, not within the rule announced in the cited case, denying injunctive relief against an anticipated, eventual nuisance, but rather makes applicable to its different facts the different rule, prescribing the giving of such relief where the nuisance is, as here, found to be an existing one, as was declared and applied by this court to the very analogous facts presented in the case of Cumberland Grocery Co. v. Baugh's Adm'r, 151 Ky. 641, 152 S. W. 565, 566, 43 L. R. A. (N. S.) 1037, Ann. Cas. 1915A, 131. There an injunction was sought against a wholesale grocery company, which the petition alleged had for five years negligently thrown from its building, onto and in the vicinity of plaintiff's residence, decayed and decaying vegetable and animal matter, thereby causing stenches and unhealthful odors to come around plaintiff's house and premises, making his residence an unhealthful and undesirable place in which to

live. Upon such showing made, it was there held that the action of the grocery company in so disposing of vegetable and animal matter was a nuisance. The court in granting the relief sought said:

"The owner of premises has no legal right to throw out, even on his own premises, decaying meats and vegetables from which offensive and unhealthful odors arise, to the injury of his neighbors; * * * and, if he does, * * * his conduct may be the basis of an individual action against him for a nuisance. Livezey v. Schmidt, 96 Ky. 441, 29 S. W. 25, 16 Ky. Law Rep. 596; Ky. Dist. & Warehouse Co. v. Barrett [Ky.] 112 S. W. 643."

Compare also Great Northern Refining Co. v. Lutes, 190 Ky. 451, 227 S. W. 295; Indian Refining Co. v. Berry, 226 Ky. 123, 10 S. W. (2d) 630; Board of Health of Ocean Tp. v. White, 90 N. J. Eq. 621, 110 A. 43.

Also in the case of Trowbridge v. Lansing, 237 Mich. 402, 212 N. W. 73, 50 A. L. R. 1014, much alike in its facts with the instant case, a piggery was enjoined as a private nuisance, where it appeared that the city maintained it for disposal of garbage, and that, after a trial period granted by the court for abatement of the nuisance, it still appeared that those living within 3 miles of the piggery, according to the direction of the wind, suffered physical discomfort in their homes and about their premises from the sickening, nauseating and offensive odors.

We are of the opinion that the facts as presented in the instant case bring it clearly within the rule and principles announced in these cited cases. We therefore entertain no doubt as to the propriety of the trial court's judgment in granting the injunctive relief prayed for, and its judgment in so doing is affirmed.